UNITED STATES v. LAW.

(Circuit Court of Appeals, Eighth Circuit. April 18, 1918.)

No. 4926.

1. INDIANS ⊚⇒15(1)—INDIAN LANDS—SALE.

Under Act May 27, 1908, c. 199, § 1, 35 Stat. 312, declaring that all allotted lands of enrolled full-bloods and enrolled mixed-bloods of three-quarters or more Indian blood, shall not be subject to alienation prior to April 26, 1931, but that the Secretary of the Interior may remove such restrictions wholly or in part, under such rules and regulations concerning the terms of sale and disposal of the proceeds for the benefit of the Indians as he may prescribe, where the Secretary of the Interior conditionally consented to a full-blood Cherokee's alienation of her allotment, and, reserving the right to dispose of the proceeds of the sale, with the approval of the Indian superintendent, invested the proceeds in other lands, which were conveyed to the allottee with a restriction against alienation prior to 1931, the date fixed in the act, such restriction was valid.

2. INDIANS ⊚⇒15(1)—ALLOTMENTS—RESTRAINTS ON ALIENATION—ENFORCEMENT.

Where the Secretary of the Interior removed restrictions against sale of the allotment of a full-blood Cherokee, and, reserving the right to dispose of the proceeds, reinvested the same in other property, which was conveyed to the allottee with a valid restriction against alienation, the

United States may maintain a suit to cancel a mortgage executed by the allottee and a sheriff's deed transferring the property.

Carland, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Bill by the United States against J. W. Law and others. From a decree dismissing the bill as to the named defendant, the United States appeals; its motion to dismiss without prejudice as to the other defendants being granted. Reversed and remanded, with directions.

W. P. McGinnis, U. S. Atty., and Archibald Bonds, Sp. Asst. U. S. Atty., both of Muskogee, Okl.

J. J. Henderson, of Tulsa, Okl., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

BOOTH, District Judge. This is an appeal from decree dismissing bill of complaint. The suit is brought by the United States against R. W. Smith, A. E. Russell, and J. W. Law, to remove a cloud upon the title to certain land located in the city of Tulsa, Okl., alleged to be owned by Amanda Perry, and in her possession. The complaint alleges:

That Amanda Perry is a full-blood Cherokee Indian, and duly enrolled. That in the course of administration of the affairs of the tribe she was duly allotted certain lands in the Cherokee Nation. That thereafter, in compliance with law, she duly made application for the removal of restrictions upon the alienation of the lands so allotted, and that the Secretary of the Interior conditionally removed the restrictions therefrom, reserving the right to dispose of the proceeds arising from the sale of the lands upon which restrictions were removed. That the Secretary of the Interior disposed of the proceeds arising from the sale by investing them for and on behalf of Amanda Perry in real estate in the city of Tulsa, Okl., which is the land now in controversy. That the warranty deed conveying the new lands to Amanda Perry, taken with approval of United States by the United States Indian superintendent, contained the following:

"That for and in consideration of the sum of one thousand two hundred and forty-five dollars, to them in hand paid, the receipt whereof is hereby acknowledged, from funds derived from the sale of restricted lands allotted to the said Amanda Perry, the same being funds held by the United States in trust, subject to disbursement under the supervision of the Secretary of the Interior, Alace A. Giles and Elliot N. Giles, her husband, have granted, bargained, sold, and conveyed unto the said Amanda Perry, grantee, * * * to have and to hold said described premises unto the said grantee, her heirs and assigns, forever, free and clear and discharged of all former grants, charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature, subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect, or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

That on April 7, 1914, the deed was duly recorded, with the indorsements and approval attached thereto. That defendant had knowledge of the foregoing facts. That, notwithstanding the restricted condition of said lot, Amanda Perry, with her husband, on April 12, 1915, executed to R. W. Smith and A. E. Russell a mortgage covering said lot. Said mortgage was duly recorded. Thereafter, on the 15th day of April, 1915, said Smith and Russell duly assigned said mortgage to the defendant Law, which assignment was duly recorded. Thereafter said Law brought suit in the county court of Tulsa county, Okl., for the purpose of foreclosing said mortgage, and on the 22d day of January, 1916, obtained judgment of foreclosure. Thereafter, on the 29th of September, 1916, the sheriff of said Tulsa county executed a sheriff's deed of said land to said Law, pursuant to said judgment, and said deed was duly recorded.

The complaint further alleges that the mortgage, the assignment thereof, judgment of foreclosure, and the sheriff's deed, are all ineffectual to convey any right, title, or interest in said land, but that they constitute a cloud upon the title of Amanda Perry. The complaint further alleges that under and by virtue of existing treaties between the United States and the Cherokee Tribe of Indians, and by virtue of acts of Congress, the United States government has assumed the relation of guardian and trustee of the property of the Cherokee Tribe of Indians and the individual members, and that this relationship now exists; that the present suit is brought by direction of the Attorney General of the United States, and at the request of the Secretary of the Interior, by the plaintiff, upon its own behalf and upon behalf of Amanda Perry; that the various mortgages, assignments, judgments, and deeds above described, executed or caused to be executed by the defendants herein, are hindrances to the complainant in the full discharge of its duties to the said Amanda Perry, and are made in violation of law, and interfere with the policies of the complainant in supervising, distributing, and protecting the funds and property of the Cherokee Tribe of Indians, and more particularly that of Amanda Perry. The prayer of the complaint is that the mortgage, assignment, judgment, and sheriff's deed be canceled and set aside, and defendants restrained from interfering with the possession of Amanda Perry.

The demurrer interposed by defendant Law contains several grounds, which may be reduced to two: First, that the bill of complaint fails to state a cause of action entitling plaintiff to relief; second, that the plaintiff has no power or authority to maintain the suit. The court below treated the demurrer as a motion to dismiss, and granted the motion and dismissed the bill as to defendant Law. Upon motion of plaintiff, the bill was dismissed without prejudice as to defendants Smith and Russell; leaving Law sole defendant upon this appeal.

[1] The main question in the case is: Was the restriction upon alienation which is contained in the deed to Amanda Perry valid? It is admitted upon the record that the land originally allotted to Amanda Perry was restricted as to alienation; that such restrictions were removable by the Secretary of the Interior; that application was made by Amanda Perry to the Secretary of the Interior for the removal of

restrictions upon the land allotted to her, and that the same were removed conditionally; that it was part of the conditions that the Secretary of the Interior reserved the right to dispose of the proceeds of the sale of said lands; that he did dispose of the proceeds by investing the same in other land; that this new land was purchased by the United States, through its lawful representatives, for Amanda Perry; that the deed to said land containing the restrictions above mentioned was procured and approved by the United States through its representative. It is claimed, however, by the appellee that there is no authority in law for the imposing of such restriction upon alienation upon the land newly purchased. The argument of counsel for the appellee seems to be that, while the Secretary of the Interior might lawfully impose the condition that he should direct the disposition of the proceeds of the sale of the allotment, yet when he had done this by directing an investment in the new land his power ceased.

The authority under which the Secretary of the Interior acted is contained in section 1 of the act of May 27, 1908 (35 Stat. 312, c. 199). It reads, so far as here material, as follows:

"All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

In construing this statute and others of like import, there must be kept in view the long-established and well-recognized relationship existing between the government and the Indians, the policy of the government in dealing with the Indians, as shown by Congressional enactments, and the means adopted from time to time by Congress to effect and carry out such policy through duly authorized commissions or officers. The relationship, the policy, and the means adopted are stated in numerous cases.

In Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, the court in its opinion said:

"Congress has had at all times, and now has, the right to pass legislation in the interest of the Indians as a dependent people. * * * That it was within the power of Congress to continue to restrict alienation by requiring, as to full-blood Indians, the consent of the Secretary of the Interior to a proposed alienation of lands such as are involved in this case. That it rests with Congress to determine when its guardianship shall cease, and while it still continues it has the right to vary its restrictions upon alienation of Indian lands in the promotion of what it deems the best interest of the Indian."

In United States v. Gray, 201 Fed. 291, 119 C. C. A. 529, this court in its opinion said:

"For more than a century it has been and still is the governmental policy of the United States to exercise the power granted to it by the Constitution (article 1, § 8, subd. 3) to protect the Indians and their property from the greed, rapacity, cunning, and perfidy of the members of the superior race,

.which have so often driven them to poverty, despair, and war, and to teach and persuade them to abandon nomadic habits and to adopt and practice the arts of civilization. In order to carry out this policy it has reserved and held in trust for them large tracts of land and large sums of money derived from their release of their rights of occupancy of their lands in this country, it has controlled and managed their property for them, it has furnished them with houses, barns, and other permanent improvements, with domestic animals, means of subsistence, and money in small amounts. It has provided them with government agents to advise them and to protect their property, and with physicians, farmers, schools and teachers to instruct them."

"It has been and still is the policy of the United States to protect the property and the rights of the Indians under its control, and to teach them agriculture and the arts of civilized life. The Indian reservations, the funds derived from the lease of their right of occupancy to their lands, the lands allotted to the individual Indians, but still held in trust by the United States during the period of restriction upon alienation, the leases of these lands made by the Indian superintendents or agents on the terms and conditions fixed by the Secretary of the Interior and approved by him, the tools, animals, houses, improvements, and other property furnished to these Indians by the United States, and the proceeds and income from all these, are the means -by which the nation pursues its beneficent policy of protection and instruction and exercises its lawful powers of government."

Other decisions are to the same effect. Sizemore v. Brady, 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308; Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; Choate v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941; United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192; Rainbow v. Young, 161 Fed. 835, 88 C. C. A. 653.

Provisions of statutes similar in character to the one here under consideration have been construed broadly and liberally, with a view to effecting the purposes and carrying out the policy established by the government. In United States v. Thurston County, 143 Fed. 287, 74· C. C. A. 425, this court had under consideration section 7 of the act of Congress of May 27, 1902 (32 Stat. 245, c. 888 [Comp. St. 1916, § 4223]), as affecting the sale of lands held by the Omaha and Winnebago Indians under the act of August 7, 1882 (22 Stat. 342, c. 434), or the act of February 8, 1887 (24 Stat. 389, c. 119). The clause of section 7 of the act of 1902 under consideration reads as follows:

"That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, * * * but all such conveyances shall be subject to the approval of the Secretary of the Interior."

Under this section certain Indian heirs sold their lands with the consent of the Secretary of the Interior, but—

"on condition that the proceeds of the sales should be deposited to their respective individual credits in a bank selected by the Commissioner of Indian Affairs, subject to their respective checks for not exceeding ten dollars in any one month, when approved by the Indian agent or officer in charge, and to checks for sums in excess of ten dollars per month upon the approval of the agent when specifically authorized by the Commissioner of Indian Affairs."

The county of Thurston having undertaken to tax said moneys so deposited in the bank, the United States sought an injunction to prevent this. The power of the United States to impose upon the proceeds

the conditions above recited was attacked by the county, and in answer to this attack the court in its opinion said:

"Nor is the complainant without lawful authority to hold these proceeds and to control their disposition in the same way that it held and controlled the lands in trust for the benefit of these Indian heirs. The act of 1902 authorized these heirs to sell and convey their inherited lands only when the proposed sales were approved by the Secretary of the Interior. It thereby vested in the Secretary plenary power to permit or to forbid the sales proposed. The whole is greater than any of its parts, and includes them all, and the authority to allow or to prohibit proposed sales necessarily included the power to consider and determine the terms and conditions on which such sales should be approved. * * * The acts of Congress authorized the Secretary to make these regulations for the purpose of carrying into effect the act of 1902, and, when made, they had the force of statutory enactments. R. S. §§ 441, 465; * * * U. S. v. Eaton, 144 U. S. 688 [12 Sup. Ct. 764, 36 L. Ed. 591]; Wilkins v. U. S., 96 Fed. 837 [37 C. C. A. 588]. * * * The allotted lands were held in trust by the United States for the benefit of those to whom they were assigned, and their heirs. * * * The proceeds of the sales of these lands have been lawfully substituted for the lands themselves by the trustee."

In National Bank of Commerce v. Anderson, 147 Fed. 87, 77 C. C. A. 259, the Circuit Court of Appeals for the Ninth Circuit had under consideration the same section (section 7 of the act of May 27, 1902), as affecting a sale of lands by the heirs of one James Taylor, an Indian of the Puyallup Tribe. The lands had been allotted to Taylor under the General Allotment Act of February 8, 1887. Rules had been promulgated by authority of the Secretary of the Interior, requiring that all proceeds of such sales be deposited in United States depositaries to the credit of the heirs, and subject to their checks in amounts of $10 per month, with the approval of the agent in charge, and in larger amounts only when authorized by the Commissioner of Indian Affairs. An assignee of a share of the proceeds belonging to one of the heirs brought suit therefor against the bank. The court in its opinion said:

"The question arising upon the writ of error is whether the proceeds of such a sale are payable directly to the heir of the deceased allottee, or are to be held in trust for his benefit, and paid to him in such sums as meet the approval of the Secretary of the Interior and the Commissioner of Indian Affairs. * * * In arriving at the intention of Congress in enacting the statute, it is important to bear in mind prior legislation and the declared policy of protection which the government has pursued in dealing with the Indians and their lands. * * * The statute provides that the lands may be sold with the consent of the Secretary. It thus permits a change in form of the trust property from land to money. This change may be effected only with the consent of the trustee represented in the person of the Secretary of the Interior. No citation of authority is needed to sustain the general doctrine that into whatever form trust property be converted, it continues to be impressed with the trust. That doctrine must be applied to the present case in the absence of the expressed intention of Congress to terminate the trust. We find in the Act no ground for saying that such was the intention. * * * We construe the Act as expressing the intention of Congress, not to end the trust, but to permit a change of the form of the trust property."

In Starr v. Campbell, 208 U. S. 527, 28 Sup. Ct. 365, 52 L. Ed. 602, the Supreme Court had under consideration the provisions contained in article 3 of the Treaty of 1854 (10 Stat. 1110), relating to

Chippewa Indians of Lake Superior. Among the provisions of article 3 were the following:

"And the President may, from time to time, at his discretion, cause the whole to be surveyed, and may assign to each head of a family, or a single person over twenty-one years of age, eighty acres of land for his or their separate use; and he may, at his discretion, as fast as the occupants become capable of transacting their own affairs, issue patents therefor to such occupants, with such restrictions of the power of alienation as he may see fit to impose."

The right to allotments was subsequently extended by act of Congress to all Indians on certain reservations irrespective of age or condition.

In December, 1893, the President made certain rules and regulations to govern contracts for the sale of timber by the Indians; among others, rule 7, which provided:

" * * * And the proceeds of timber taken from the allotted lands of the reservation shall, after the deductions above stated, be deposited in some national bank subject to check of the Indian owner of the allotment, countersigned by the Indian agent of the La Pointe agency, unless otherwise stipulated in contracts with particular Indians."

In January, 1902, the plaintiff, Indian, a minor, made a contract for the sale of timber standing upon his allotment. In December, 1902, the President amended rule 7 by adding thereto the following:

"If the Indian agent shall in any case be of the opinion that the allottee is not competent to manage his own affairs, he shall, subject to the approval of the Commissioner of Indian Affairs, have authority to fix the sum or sums, if any, such allottee shall be permitted to withdraw from deposit."

The Commissioner of Indian Affairs modified the timber contract so as to make it subject to the amendment last mentioned, and approved it as thus modified. Action was brought by plaintiff, Indian, against defendant Indian agent to recover the moneys collected and held by him. It was contended by the plaintiff that the Commissioner had no authority to interfere with the disposition of the money by the Indian agent, and that the guardian of the plaintiff was the proper party to determine how much should be paid and expended for the plaintiff. The court in its opinion disposed of this contention, using the following language:

"We cannot yield to the contention that the consent of the President to the contract ended his authority over the matter. In other words, that he could put no conditions upon it"

—citing, with approval, United States v. Thurston County, supra; National Bank of Commerce v. Anderson, supra. It was held that the restriction imposed upon the proceeds was valid.

In view of the foregoing decisions, and keeping in mind in the case at bar the relationship existing between the United States and the Cherokee Indians, including Amanda Perry, the policy of the government in its dealings with these Indians, and the methods and means adopted to carry out such policy, after careful consideration of the language of section 1 of the act of May 27, 1908, we conclude that the restrictions imposed by the Secretary of the Interior upon the aliena-

tion of the new lands purchased for Amanda Perry were in further-ance of the policy of Congress in protecting and caring for her as a ward of the government, were within the authority granted by said section 1, and were valid and enforceable.

McCurdy v. United States, 246 U. S. 263, 38 Sup. Ct. 289, 62 L. Ed. ——, is not opposed to the conclusion here reached. In that case the principal question decided was whether the Secretary of the Interior had authority to order inserted in a deed of land running to an Osage Indian the following clause:

"This conveyance is made and accepted with the understanding, and under the condition that the above described property is to be and remain inalien-able and not subject to transfer, sale or incumbrance, for a period of eighteen years from the 1st day of July, 1913, except by and with the express consent and approval of the Secretary of the Interior, or his successor in office."

The facts in the case were that the United States held certain funds in trust for the Osage Indians and to their individual credit; that the Secretary of the Interior paid from the principal of the trust fund so held for Robert Panther, a noncompetent Osage allottee, the sum of $1,750, which was applied in payment for a lot of land in the city of Pawhuska. The land when purchased was conveyed to one Brenner, as trustee for Robert and Emma Panther, but soon after it was conveyed by Brenner to Robert Panther individually. The authority of the Secretary of the Interior to have the above-quoted clause in-serted in the deed was challenged in certain tax proceedings. The authority was claimed on behalf of the United States under section 5 of the act of April 18, 1912 (37 Stat. 86, c. 83), which reads as follows:

"Sec. 5. That the Secretary of the Interior, in his discretion, hereby is authorized, under rules and regulations to be prescribed by him and upon application therefor, to pay to Osage allottees, including the blind, insane, crippled, aged, or helpless, all or part of the funds in the treasury of the United States to their individual credit: Provided, that he shall be first sat-isfied of the competency of the allottee or that the release of said individual trust funds, would be to the manifest best interests and welfare of the allottee: Provided further, that no trust funds of a minor or a person above men-tioned who is incompetent shall be released and paid over except to a guardian of such person duly appointed by the proper court and after the filing by such guardian and approval by the court of a sufficient bond conditioned to faith-fully administer the funds released and the avails thereof."

The court in its opinion in passing upon said section said:

"The Secretary is authorized to prescribe the rules and regulations under which such releases shall be made; but he is not given authority to exercise control of any property in which the funds released may thereafter be invested, or otherwise to create with the released funds a governmental instrumentality for the protection of the Osages. * * *"

Again:

"There is nothing in the act or in the facts to which it applies that indi-cates a purpose to extend governmental control to property in which released funds may be invested. * * *"

Again:

"Furthermore, in the case at bar it is not shown that the money released from the trust was invested directly in property restricted as to alienation.

250 F.—15

* ·* * It is consistent with the facts shown that the restriction upon alienation inserted in the deed, was not a continuation of control reserved by the Secretary of the Interior, but a bringing under his control of a part of Panther's estate theretofore freed."

In the case at bar there are in the act involved (section 1 of the act of May 27, 1908 [35 Stat. 312]) words which clearly indicate a purpose to extend governmental control to property in which the proceeds of released lands may be invested. The last clause of the section reads:

"Except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

Furthermore, the moneys derived from the released lands in the instant case were invested directly in the property upon which the restriction as to alienation was placed. There was consequently not a bringing under the control of the Secretary of the Interior a part of the estate of Amanda Perry theretofore freed, but, on the contrary, merely a continuation of the control reserved by the Secretary of the Interior. This latter distinction is specifically noted in McCurdy v. United States, supra.

It is contended by appellee that no power exists even in Congress to withdraw lands once subject to taxation by state authority from such status of taxability, and that the restrictions upon alienation imposed by the Secretary of the Interior upon the new land purchased for Amanda Perry undertake to effect such withdrawal of the new land.

The question whether exemption from taxation was attempted to be created by the restriction provision contained in the deed of the new land to Amanda Perry, and the further question whether Congress could authorize the creation of such exemption as to this new land, or the transfer of the exemption from the old land to the new, are neither of them involved in the present case, and we express no opinion thereon.

[2] In view of what has been said as to the character and validity of the restrictions, the question of the right of the government to maintain the present suit requires no discussion. Such right is thoroughly established. Section six, last paragraph, 35 Stat. 312; Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; affirming 179 Fed. 13, 103 C. C. A. 1; United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844; United States v. Gray, 201 Fed. 291, 119 C. C. A. 529; United States v. Black, 247 Fed. 942, —— C. C. A. ——.

It follows that the decree dismissing the bill should be reversed, and the cause remanded, with directions for further proceedings not inconsistent with the views herein expressed; and it is so ordered.

CARLAND, Circuit Judge (dissenting). I am of the opinion that the provision in the deed from the Gileses to Amanda Perry, whereby she is prohibited from making any transfer of the land described in the deed without the confirmation of the Secretary of the Interior, is void for want of power in the latter to impose such a condition.