**UNITED STATES v. YAKIMA COUNTY et al.**

(District Court, E. D. Washington, S. D.   June 18, 1921.)

Nos. 824–826.

**Taxation �köm181—Substitute trust lands of Indians not taxable.**

Where an Indian allottee of the Yakima tribe in Washington died before the expiration of the trust period, and his land was sold by the Secretary of the Interior under Act May 29, 1908, § 1 (Comp. St. § 4224), which authorizes such sale and the use of the proceeds during the trust period for the benefit of the heirs, and the proceeds were invested in other lands, the conveyances reciting that they could not be disposed of or incumbered without the consent of the Commissioner of Indian Affairs, such substitute lands during the trust period *held* exempt from state taxation.

In Equity.   Suit by the United States against Yakima County and others.   Decree for complainant.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash.
H. J. Snively, of Yakima, Wash., for defendants.

RUDKIN, District Judge.   The General Allotment Act of February 8, 1887 (24 Stat. 388, 389, § 5 [Comp. St. § 4201]), provides as follows:

"Patents shall be of the legal effect and declare that the United States does and will hold the land thus allotted, for a period of twenty-five years, in trust for the sole use and benefit of the Indian to whom said allotment shall have been made or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust, and free of all charge or incumbrance whatsoever: Provided, that the President of the United States may in any case in his discretion extend the period, and if any conveyance shall be made of the land set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

Section 1 of the Act of May 29, 1908 (35 Stat. 444 [Comp. St. § 4224]), provides:

"That when any Indian who has heretofore received or who may hereafter receive an allotment of land dies before the expiration of the trust period, the Secretary of the Interior shall ascertain the legal heirs of such Indian, and if satisfied of their ability to manage their own affairs shall cause to be issued in their names a patent in fee simple for said lands; but if he finds them incapable of managing their own affairs, the land may be sold as hereinbefore provided: Provided, that the proceeds derived from all sales hereunder shall be used, during the trust period, for the benefit of the allottee, or heir, so disposing of his interest, under the supervision of the Commissioner of Indian Affairs: And provided further, that upon the approval of any sale hereunder by the Secretary of the Interior he shall cause a patent in fee to issue in the name of the purchaser for the lands so sold.   *   *   *"

In the case now before the court the allottees died before the expiration of the trust period; the legal heirs of the deceased allottees were ascertained as provided by law; the lands were sold, presumably because it was found that the heirs were incapable of managing their own

affairs, and parts of the proceeds of the sales were invested in other lands under the direction and supervision of the Secretary of the Interior, the conveyances reciting that the lands so acquired could not be disposed of or incumbered without the consent of the Commissioner of Indian Affairs. The sole question presented for decision is: Are the lands acquired with the proceeds of the sales of the allotted lands exempt from taxation during the trust period by the state and its municipal subdivisions?

In United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, it was held:

"That neither the lands allotted nor the permanent improvements thereon nor the personal property obtained from the United States and used by the Indians on the allotted lands, are subject to state or local taxation during the period of the trust provided by the above act of 1887."

In the oft-cited case of United States v. Thurston County, Neb., 143 Fed. 287, 74 C. C. A. 425, it was held that the allotted lands were exempt from taxation by the state or county during the trust period; that the proceeds of the sales of such allotted lands by the Indian heirs of allottees were held in trust by the United States for the same purposes as were the lands, and are exempt from taxation by the state or county for the same reason; that no change of form of property divests it of the trust; that the substitute takes the nature of the original and stands charged with the same trust, and that the authorized sale of trust property by a trustee discharges the property sold and charges the proceeds of sale in the hands and under the control of the trustee with the trust.

In National Bank of Commerce v. Anderson, 147 Fed. 87, 77 C. C. A. 259, a similar ruling was made by the Circuit Court of Appeals for this Circuit.

In United States v. Pearson (D. C.) 231 Fed. 270, 281, after citing United States v. Rickert, supra, the court said:

"Under this decision the changed forms of the property held in trust, as time brings such changes about in live stock and other personal property of the Indians, even to exchanges between themselves of trust property, are impressed with the trust. Even the substitute takes the nature of the original and is charged with the trust. The authorized sale of trust property by a trustee discharges the property sold from, and charges the proceeds of the sale, in the hands of and under the control of the trustee, with the trust."

In United States v. Law, 250 Fed. 218, 162 C. C. A. 354, it was held that property purchased with trust funds, as in these cases, was subject to the trust, and that a mortgage by the Indian grantee was null and void.

In United States v. Nez Perce County, Idaho (D. C.) 267 Fed. 495, it was held that land acquired in the same manner was not subject to state taxation. The only distinction between the Nez Perce County case and the cases now before the court lies in the fact that the land was there held in trust for the Indians by the Superintendent of Indian Schools, a distinction, of course, without a difference.

These decisions afford ample authority for the position taken by the government in these cases. Whether they have been limited or overruled by the decision in McCurdy v. United States, 246 U. S. 263, 38

Sup. Ct. 289, 62 L. Ed. 706, may admit of question. In that case, by section 5 of the Act of April 18, 1912 (37 Stat. 87), the Secretary of the Interior in his discretion was authorized to pay to Osage allottees all or part of the funds in the treasury of the United States to their individual credit. There, as here, a part of the funds were invested in other lands and a conveyance taken to the Indian similar in form to the conveyances now before the court. The Supreme Court held that the authority of the Secretary was limited to releasing or withholding the funds, and that he was given no authority to exercise control over any property in which the funds released might thereafter be invested, or otherwise to create with the released funds a governmental instrumentality for the protection of the Osages.

The Act of May 29, 1908, supra, however, is broader in its terms. That act provides that the proceeds arising from the sale shall be used during the trust period for the benefit of the allottee or heir so disposing of his interest under the supervision of the Commissioner of Indian Affairs. Authority to use is much broader than a mere authority to release, and had these funds been used in the purchase of personal property for the use of the Indians on their allotments I have no doubt that the property so acquired would be exempt from state taxation under the authorities heretofore cited. I am not prepared to say, therefore, that the acquisition of these lands was not a legitimate exercise of the authority vested in the Secretary of the Interior.

However, there is another reason why the property is exempt from taxation by the state and county. Section 4 of the Enabling Act (Act Feb. 22, 1889, c. 180, 25 Stat. 677) declares: ·

"And said conventions shall provide, by ordinances irrevocable without the consent of the United States and the people of said states: * * *

"Second. That the people inhabiting said proposed states do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States. * * * But nothing herein, or in the ordinances herein provided for, shall preclude the said states from taxing as other lands are taxed any lands owned or held by any Indian who has severed his tribal relations, and has obtained from the United States or from any person a title thereto by patent or other grant, save and except such lands as have been or may be granted to any Indian or Indians under any act of Congress containing a provision exempting the lands thus granted from taxation; but said ordinances shall provide that all such lands shall be exempt from taxation by said states so long and to such extent as such act of Congress may prescribe."

The compact with the United States embodied in article 26 of the state Constitution contains similar language. Here is an express declaration that the property of Indians who have not severed their tribal relations remains under the absolute jurisdiction and control of the United States, and a plain implication that such property is not taxable by the state until the Indians have severed their tribal relations. See United States v. Higgins (C. C.) 103 Fed. 348; United States v. Heyfron (C. C.) 138 Fed. 964; United States v. Pearson, supra.

Some question was raised during the trial as to whether these Indians have severed their tribal relations, but the government of the United States through all its departments has repeatedly and consistently recognized the Yakima Indians as a tribe, and I feel satisfied that the Indians in question were members of that tribe, although in the process of civilization tribal relations have become somewhat loose and difficult of definite proof.

For these reasons, I am of opinion that the taxes in question were imposed without warrant or authority of law, and decrees will be entered in the several cases in accordance with the prayers of the complaints.