### UNITED STATES v. SMITH et al.

(District Court, E. D. Oklahoma. March 15, 1922.)

No. 2360.

Indians ⊝27(5)—Government held not authorized to institute action for benefit of heirs of Cherokee Indian.

The government had no authority to institute and maintain an action after the death of a Cherokee Indian for the benefit of her full-blood heirs to cancel a mortgage executed by the deceased and to quiet title to a town lot, not embraced in land allotted to the deceased, but purchased from funds derived from the sale of restricted lands allotted to the deceased; the same being funds held by the government in trust subject to

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

disbursement under the supervision of the Secretary of the Interior, though the certificate of the Indian superintendent attached to the deed provided that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument, could be executed during the life of the deceased without the approval of the Secretary of the Interior, under Act Cong. May 27, 1908, c. 199; Act Cong. April 26, 1906, c. 1876, §§ 19, 22; Act March 3, 1901, c. 868; Const. Okl. art. 3, § 1; Enabling Act Okl. § 2, and not providing that such restriction as to said lot shall apply to her full-blood Cherokee heirs during such period.

In Equity. Suit by the United States of America against R. W. Smith and others. On an agreed case. Judgment for defendants.

Frank Lee, U. S. Atty., and O. H. Graves, Asst. U. S. Atty., both of Muskogee, Okl.

J. J. Henderson, of Tulsa, Okl., for defendants.

WILLIAMS, District Judge. Plaintiff has interposed a motion for judgment on the agreed facts, which, among other things, raises the question of the authority of plaintiff to institute and maintain this action, after the death of Amanda Perry, for the benefit of her heirs. The city or town lot in question, not embraced in land allotted to the said Amanda Perry, was purchased "from funds derived from the sale of restricted lands allotted to the said Amanda Perry; the same being funds held by the United States in trust, subject to disbursement under the supervision of the Secretary of the Interior."

The certificate of the United States Indian Superintendent attached to said deed is as follows:

"I hereby certify that the land described in the above deed was purchased for the said Amanda Perry with funds *held in trust* by the United States for her benefit derived from the sale of restricted land allotted to her by virtue of her enrollment as a full-blood citizen of the Cherokee Nation, opposite No. 10601, on the final approved rolls of citizens by blood of that nation, and that said purchase was made and said deed was executed and the same is hereby approved pursuant to the act of Congress of May 27, 1908, which authorized the Secretary of the Interior to remove restrictions from lands allotted to members of the Five Civilized Tribes. *Wholly or in part under such rules and regulations concerning terms of sale and disposal of proceeds for the benefit of the respective Indians as he may prescribe.*" (Italics mine.)

The restricting clause in the habendum clause of the deed provides that—

"No lease, deed, mortgage, power of attorney, contract to sell or other instrument affecting the land therein described, or the title thereto, executed *during the life time of said grantee at any time prior to April 26, 1931, shall be of any force or effect or capable of confirmation or ratification unless made with the consent of and approved by the Secretary of the Interior.*" (Italics mine.)

The mortgage in favor of the defendants' assignors was executed by said grantee, Amanda Perry, same "not having been made with the consent of and the approval of the Secretary of the Interior." Under the holding in United States v. Law, 250 Fed. 218, 162 C. C. A. 354, said mortgage was of no "force or effect or capable of confirmation or ratification."

Under the agreed facts, Amanda Perry died on May 1, 1916. The original bill herein was filed subsequent thereto, to wit, on November

29, 1916, for her benefit. The former trial was had and appeal was disposed of on the assumption that she was alive. When the case was remanded by the Circuit Court of Appeals for a new trial, a representative of the government, having discovered the death of the said Amanda Perry, filed the amended bill for the benefit of her heirs at law, to wit, Samuel Perry, her husband, and her children, Daisy Perry, Sofrono Perry, and Charles Perry—all being full-blood Cherokee Indians. See United States v. Law, supra.

Section 19 of Act of Congress April 26, 1906 (34 Stat. 137) provides:

"That no full-blood Indian of the * * * Cherokee * * * tribes shall have power to alienate, sell, dispose of, or encumber in any manner any of the *lands allotted* [italics mine] to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by act of Congress. * * *"

Section 22 of said act also provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued *for his or her share of the land of the tribe to which he or she belongs or belonged* [italics mine], may sell and convey the lands inherited from such decedent. * * *"

Act of Congress, May 27, 1908 (35 Stat. 312) provides:

"That from and after sixty days from the date of this act the status of the *lands allotted* heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: * * *

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said *allottee's land*: *Provided*, that no conveyance of any interest of any full-blood Indian heir in *such land* shall be valid unless approved by the court having jurisdiction of the settlement of the estate of *said deceased allottee*. * * *"

On the part of the plaintiff it is urged that as the heirs are full-blood Cherokee Indians, this action can be maintained on the part of the United States for them for the cancellation of the mortgage and the quieting of title to said lot.

In McCurdy v. United States, 246 U. S. 263, 38 Sup. Ct. 289, 62 L. Ed. 706, it is said:

"While an Indian is still a ward of the Nation, there is power in Congress even to reimpose restrictions on property already freed; Brader v. James, decided this day, ante, 88; but Congress did not confer upon the Secretary of the Interior authority to exercise such power under the circumstances of this case or to give to property purchased with released funds immunity from state taxation."

In United States v. Waller, 243 U. S. 452, 37 Sup. Ct. 430, 61 L. Ed. 843, it is said:

"The act thus evidences a *legislative judgment* that adult mixed-blood Indians are, in the respects dealt with in the act, capable of managing their own affairs, and for that reason they are given full power and authority to dispose of allotted lands. *This may be a mistake of judgment* as to some cases, and if the allegations of the bill set forth in the certificate in this case are true, it is quite evident that the Indians here involved were incapable of making an intelligent disposition of their lands. But Congress dealt with general conditions, and with these classes of Indians as a whole, and with authority

over the subject has given to adult mixed-blood Indians the full right to dispose of the lands in question. *It is not for the courts to question this legislative judgment.* [Italics mine.]

"In this view of the legislation and the particular act in question, we are unable to find any authority in the United States to maintain this suit in behalf of the Indians named.

"In Heckman v. United States, 224 U. S. 413, it was held that the United States could maintain a bill to cancel conveyances made by members of the Cherokee Nation in violation of restrictions imposed by acts of Congress. That case differs from the present one, in which there has been no disposition of the lands in violation of restrictions imposed by Congress upon alienation by the Indians. In the case now before us, in whatever other respect the government of the United States may continue to hold these Indians as wards, needing and receiving protection from its authority over their persons and property, as to the lands in question the United States, in the passage of the Clapp Amendment, evidenced its purpose to grant full power and control to the class named. As to them the government has no further interest in or control over the lands.

"It does not follow that the Indians are without remedy in proper actions brought by themselves or their guardians, if there be such, for the protection of their rights. In Dickson v. Luck Land Co., decided at this term and reported in 242 U. S. 371, this court had occasion to deal with rights concerning lands allotted and patented under the Clapp Amendment to adult mixed-blood Chippewa Indians, and speaking of the effect of the removal of the restrictions, this court said, at page 375:

" 'With those restrictions entirely removed and the fee simple patent issued it would seem that the situation was one in which all questions pertaining to the disposal of the lands naturally would fall within the scope and operation of the laws of the state. And that Congress so intended is shown by the Act of May 8, 1906, c. 2348, 34 Stat. 182, which provides that when an Indian allottee is given a patent in fee for his allotment he "shall have the benefit of and be subject to the laws, both civil and criminal, of the state." Among the laws to which the allottee became subject, and to the benefit of which he became entitled, under this enactment were those governing the transfer of real property, fixing the age of majority and declaring the disability of minors.'

"We reach the conclusion that in this suit the United States was without capacity to bring the action for the benefit of the Indians named, and it follows that the question propounded must be answered in the negative.",

This not being a pending action at the time of her death, it cannot be revived by amendment for the benefit of the succession by way of inheritance. The question here is: Can the United States under the facts disclosed by the record of plaintiff after the death of Amanda Perry maintain this action for the benefit of her heirs?

The lot covered by the mortgage, though restricted for a certain period "during the lifetime" of said Amanda Perry, "at any time prior to April 26, 1931," not as "an allottee," but by virtue of the "restrictive clause contained in the deed," vested by inheritance or such succession in her heirs according to the laws of the state of Oklahoma who were not only citizens of the United States and of the state of Oklahoma, but also as a general rule subject to the civil and criminal laws of said state.

Section 1, art. 3, of the Constitution of Oklahoma, provides that—

"The qualified electors of the state shall be male citizens of the United States, male citizens of the state, and male persons of Indian descent native of the United States. * * *

Section 2 of the Enabling Act for the State of Oklahoma (Williams' Annotated Constitution of Oklahoma, p. 241; 34 U. S. Stat. at Large, c. 3335, p. 268) also provides:

"That all male persons over the age of twenty-one years, who are citizens of the United States, or who are members of any Indian Nation or tribe in said Indian Territory and Oklahoma, and who have resided within the limits of said proposed state for at least six months next preceding the election, are hereby authorized to vote for and choose delegates to form a constitutional convention for said proposed state; and all persons qualified to vote for said delegates shall be eligible to serve as delegates. * * * "

By act of Congress approved March 3, 1901 (31 Stat. L. c. 868, p. 1447), said heirs became citizens of the United States, wherein it is provided:

"That section 6 of chapter one hundred and nineteen of the United States Statutes at Large numbered twenty-four, page three hundred and ninety, is hereby amended as follows, to wit: After the words 'civilized life,' in line thirteen of said section, * * * insert the words 'and every Indian in Indian Territory.'"

Section 2 of Act of May 27, 1908 (35 U. S. Stat. c. 199, p. 312), defines the ages of minor allottees, male and female, of the Cherokee Tribe of Indians, and provides for the disposition by lease of allotted lands of such minors on which restrictions have not been removed.

By section 6 property of minors so defined are subjected to the jurisdiction of the state probate courts, and the Secretary of the Interior is empowered, under rules and regulations to be prescribed by him—

"to appoint such local representatives within the state of Oklahoma * * * as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and whenever such representative * * * shall be of opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative * * * shall have power and it shall be their duty to report said matter in full to the proper (state) probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting *any necessary remedy, either civil or criminal, or both,* to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior. All such reports, *either to the Secretary of the Interior or to the proper probate (state) court, shall become public records and subject to the inspection and examination of the public, and the necessary court fees shall be allowed against the estates of said minors.* The (state) probate courts may, in their discretion, appoint any such representative of the Secretary of the Interior as guardian or curator for such minors, without fee or charge, * * * and *at the request of any allottee having restricted land* he shall, without charge, except the necessary court and recording fees and expenses, if any, *in the name of the allottee,* take such steps as may be necessary, including the bringing of any suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other encumbrance of any kind or character, made or attempted to be made or executed in violation of this act or any other act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands." (All italics and parentheses mine.)

Said section further provides:

"Nothing in this act shall be construed as a denial of the right of the United States to take such steps as may be necessary, including the bringing of any suit and the prosecution and appeal thereof, to acquire or retain possession of restricted Indian lands, or to remove cloud therefrom, or clear title to the same, in cases where deeds, leases, or contracts of any other kind or character whatsoever have been or shall be made contrary to law with respect to such lands prior to the removal therefrom of restrictions upon the alienation thereof; such suits to be brought on the recommendation of the Secretary of the Interior without costs or charges to the *allottees* [italics mine], the necessary expenses incurred in so doing to be defrayed from the money appropriated by this act."

The foregoing clause is a proviso in an act entitled:

"An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes and for other purposes."

In Ryan et al. v. Carter et al., 93 U. S. at page 83, 23 L. Ed. 807, it is said:

"The general rule of law is, that a proviso carves special exceptions only out of the body of the act: and those who set up any such exception must establish it, as being within the words as well as the reason thereof. United States v. Dickson, 15 Pet. 165."

In United States v. Dickson, 15 Pet. 141, 10 L. Ed. 689, it is said:

"That proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms."

Applying this rule to the circumstances in the present case, sections 1, 2, 3, 4, 5, and 6, of said act relates to "allotted lands" of the Five Civilized Tribes, and the conclusion must follow that said proviso was intended to apply to the bringing of suits and the prosecution and appeals in cases as to deeds, leases, or contracts made contrary to federal law with respect to such allotted Indian lands.

As citizens of the United States and subject to the civil and criminal laws of the state and the fee-simple title to said lot being vested in them, without regard to their membership in any Indian tribe, and all restrictions as to alienation and incumbrances thereon being entirely removed, all questions as to the incumbrances or cloud upon the title of such lot would rest for determination by suit at the instance of said heirs, either in suam propriam personam or if a minor or incompetent, by a guardian appointed by the proper state court or by the executor or other personal representative.

Neither is the estate nor the heirs of said decedent without remedy, the former in a proper action brought by the executor or such personal representative of the decedent, or the latter by a guardian if such heirs be minors, or if adults but adjudged incompetent, by guardian, or if adults and not adjudged incompetent by themselves may seek relief in the proper state court or in the federal court where the jurisdictional fact or matter exists.

Judgment will be entered against the plaintiff on account of want of authority to prosecute in its name this action as to such lot.