## HASS et ux. v. PERRY et al.

No. 12237—Opinion Filed Oct. 30, 1923.

Rehearing Denied April 8, 1924.

### Indians — Purchased Lands — Invalidity of Restrictions on Sale Imposed by Secretary of the Interior.

P., an adult unmarried man of 5-8 blood Chickasaw, duly enrolled as such Chickasaw Indian, bought 40 acres of land from H., for which he paid $800 by checks which were paid under the supervision of the Secretary of the Interior from funds realized from the sale of P.'s restricted homestead allotment from which the restrictions had been removed and sale had two years prior thereto. The land was purchased as an investment and not as a governmental instrumentality for the care of P. as a ward of the government. Under the supervision of the Secretary of the Interior a clause was written in the deed restricting the sale of the land so purchased by the grantee with out the approval of the Secretary of the Interior. Held, the Secretary of the Interior was without authority of law to restrict the sale of the land so purchased and the conveyance of said land by P. without such approval was a valid conveyance.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by F. D. Hass and Mattie Hass against Lee Perry, James Jones, and James Turner. Judgment for defendants, and plaintiffs appeal. Reversed, with directions to set aside the judgment and render judgment quieting title in the plaintiffs.

C. F. Green, for plaintiffs in error.

B. C. Wadlington, for defendants in error.

Opinion by RAY, C. F. D. Hass sold 40 acres of land in Pontotoc county to Lee Perry, 5-8 blood Chickasaw Indian, for $800. Payment was made with money in the hands of the Indian agent realized from the sale of Perry's restricted homestead. The deed was prepared by the Indian agent, who, without the knowledge of Hass, placed the following restrictions in the deed:

"Except—That no conveyance or assignment by the grantee herein of any interest in the land herein described shall operate to convey title thereto unless said conveyance or assignment is approved by the Secretary of the Interior."

This deed was of date November 29, 1911, and filed for record the same day. February 8, 1912, Perry sold the land back to Hass' wife for $900 and conveyed by warranty deed containing this provision:

"* * * That the said Lee Perry in making the transfer is not giving title to land allotted but to land purchased by him.

"The above land being no part of either of his homestead or surplus which was allotted to him out of his portion of land belonging from the Chickasaw Nation through the Secretary of Interior. * * *"

Hass and his wife have been in possession at all times, and in 1920 commenced this suit to quiet title as against any claim Perry or his heirs might have by reason of the restrictions written in the deed to Perry by the Indian agent under the supervision of the Interior Department. Perry, by cross-petition, set up the restrictions and his consequent incapacity to convey and asked that title be quieted in him. Judgment was for Perry upon the ground that:

"The purchase money paid by Perry for the land, under the supervision of the Secretary of the Interior, was the proceeds of the sale of Perry's restricted homestead and the restrictions remained upon the land and that the plaintiffs are estopped from claiming any right, title or interest therein."

The vital question is, Was the restriction written in the deed from F. B. Hass and wife to Lee Perry by the Indian agent a valid and binding restriction? The question has never been before this court, but has been before the federal courts in McCurdy et al. v. United States, 246 U. S. 263, United States v. Law, 250 Fed. 218, and United States v. Gray et al., 284 Fed. 103,

The opinion by Mr. Justice Brandeis in McCurdy v. United States appears to have been the first expression directly upon the subject. The opinions in the other cited cases were written in the light of that case. From a careful consideration of all of the above authorities we think the power and authority of the Secretary of the Interior to require such restriction turned upon the question as to whether the investment was made before the funds were released from the trust, and made an "instrumentality and means utilized by the government in furtherance of its policy in caring for the best interests of its ward."

In McCurdy v. United States the facts are these: The Secretary of Interior, from the principal of the trust fund held for Robert Panther, a noncompetent Osage allottee, bought a lot for Robert Panther in the city of Pawhuska. The land when first purchased was conveyed to one Brenner as trustee for Panther, but soon after was conveyed by Brenner to Panther. The deed to Panther contained the following clause:

"This conveyance is made and accepted with the understanding, and under the condition that the above described property is to be and remain inalienable and not subject to transfer, sale or incumbrance for a period of eighteen years from the 1st day of July, 1913, except by and with the express consent and approval of the Secretary of the Interior, or his successor in office."

After the title passed to Panther default was made in the payment of the taxes and an injunction proceeding was brought by the government in the interest of Panther to enjoin the issue of a tax deed.

Mr. Justice Brandeis, after reviewing the acts of Congress and the purposes and intentions of the government in dealing with the Osage Indian, said:

"The Secretary is authorized to prescribe the rules and regulations under which releases shall be made; but he is not given authority to exercise control of any property in which the funds released may thereafter be invested, or otherwise to create with the released funds a governmental instrumentality for the protection of the Osages. * * * While an Indian is still a ward of the nation, there is power in Congress even to reimpose restrictions on property already freed; * * * but Congress did not confer upon the Secretary of the Interior authority to exercise such power under the circumstances of this case or to give to property purchased with released funds immunity from state taxation."

In United States v. Law, the facts are: Amanda Perry, a full-blood Cherokee Indian with certain lands allotted to her in the Cherokee nation, made application for the removal of restrictions upon the alienation of her allotment and the Secretary of the Interior conditionally removed the restriction therefrom, reserving the right to dispose of the proceeds arising from the land upon which restrictions were removed. The Secretary of the Interior disposed of the proceeds by investing them on behalf of Amanda Perry in certain real estate in the city of Tulsa. The warranty deed conveying the land to Amanda Perry, taken with the approval of the United States by the United States Indian Superintendent, contained the following:

"* * * Subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect, or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

The deed was duly recorded and Law had

knowledge of the restriction contained in the deed. Amanda Perry and her husband mortgaged the land and Law became the holder of the note and mortgage. He brought suit to foreclose, recovered judgment, and the property was sold to Law. The United States, on behalf of Amanda Perry, claiming that the mortgage and foreclosure proceedings were void, brought suit to quiet her title. Judge Booth, in the opinion, set forth the material facts upon which the opinion rested for its reversal, and which distinguished McCurdy v. United States. The court said:

"* * * We conclude that the restrictions imposed by the Secretary of the Interior upon the alienation of the new lands purchased for Amanda Perry were in furtherance of the policy of Congress in protecting and caring for her as a ward of the government, were within the authority granted by said section 1, and were valid and enforceable."

The conclusion seems to have been based upon the facts that the removal of the restriction was conditional; that it was a part of the conditions that the Secretary of the Interior reserved the right to dispose of the proceeds and that he did dispose of the proceeds by investing them in the land for the ward; that the land was purchased by the United States for her in furtherance of the policy of Congress in protecting and caring for her as a ward of the government. These appear to be the facts which distinguish the case from McCurdy v. United States.

Judge Sanborn concurred in the opinion of Judge Booth, but Judge Carland dissented in this language:

"I am of the opinion that the provision in the deed from the Gileses to Amanda Perry, whereby she is prohibited from making any transfer of the land described in the deed without the confirmation of the Secretary of the Interior, is void for want of power in the latter to impose such a condition."

In United States v. Gray the facts are these: Lizzie Lewis sold her homestead allotment under the consent and supervision of the Secretary of the Interior, which was inalienable without his consent, and the proceeds were held as a trust fund for her. With a portion of those funds two lots were bought for her in the town of Eufaula and the purchase price was paid by the superintendent under orders, rules, and regulations of the Secretary of the Interior for her benefit. The deed contained the following clause:

"Subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

In the opinion it is pointed out that the object of the purchase was not disclosed by the record. The court said:

"While there is no express provision in the Constitution prohibiting the states from taxing the means and instrumentalities of the general government, yet it is established beyond question that exemption from such taxation rests upon necessary implication. McCullough v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, and cases which follow it establishing that principle need not be further noticed. It would follow that if these two lots were purchased as necessary or appropriate means to be used in caring for, educating or furnishing a needed home for Lizzie Lewis as one of the government's wards, they would be beyond the reach of the state's power to exact, by way of taxation, a tribute or toll laid upon them for local or state purposes. Again, if Congress had empowered the Secretary at his discretion to invest these funds in other lands or lots and had expressly provided that they should be exempt from tax levies, the question would doubtless not be here. U. S. v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. But the fact that funds arising from the sale of allotments are trust funds over which the Secretary is given some power of disposition does not, in our judgment, give him a right, without more, to invest them in real estate. The established rule is to the contrary, 2 Perry on Trusts (5th Ed.) 606 et seq.; much less can it be said that every such investment, per se, would withdraw the property purchased from taxation to which it had theretofore been subject."

It may be urged that in McCurdy v. United States and United States v. Gray the restrictions upon the sale of the land without the approval of the Secretary of the Interior were not held to be invalid, but only that the lands were not immune from taxation by reason of the restrictions. It is true the question was not in issue in either case. The question was whether the land so restricted was subject to taxation. They were held taxable because they were not instrumentalities for carrying out the purposes of the government in caring for its ward. If it had been such governmental instrumentality the lands would not have been taxable as was expressly declared in United States v. Gray. All the property held by the government in trust for the Indians or used as an instrument in caring

for the Indians is immune from taxation.. It is only when it ceases to be so held or used that it becomes taxable. It is held taxable only when not a governmental instrumentality. The Secretary of the Interior is empowered to restrict the sale of purchased land only when it is such instrumentality, and he is therefore empowered to restrict such sale only when it constitutes such instrumentality as to make the land immune from taxation. The whole policy of Congress in dealing with the Five Civilized Tribes in recent years has been towards the removal of restriction and no express authority has been conferred upon the Secretary of the Interior to restrict the sale of lands bought by such Indians. It is only under the general authority in carrying out the general policy of the government in caring for its wards that the power to purchase land for an Indian with his money and restrict the sale has been recognized. No court has held, so far as we have been able to learn, that the power extends to ordinary investment in lands. In this case the funds were not retained and invested by the Secretary of the Interior, or under his direction, nor was the land purchased as a necessary or appropriate means to be used in caring for, educating, or furnishing a needed home for Lee Perry. Perry bought the land himself and paid for it by giving his several checks in the aggregate sum of $800. While the money was in the control of the Secretary of the Interior, or at least required the endorsement of some one acting for him to secure the payment of the checks, and the deed was prepared and the restrictive clause written under his supervision, the transaction was largely that of Perry. There is nothing disclosed by the record that indicates that the land was bought with any intention of its constituting an instrumentality for the care of Perry. It was simply an investment of $800 in 40 acres of land. Perry has at all times since this transaction was begun, been an adult unmarried man.

The order for removal of restrictions was made May 19, 1909, and shows that at the time Lee Perry owned the restricted homestead, of 130 acres and surplus of 170 acres.

We think, for the reasons stated, that the restrictive clause written in the deed is invalid and void, and the case should be reversed with directions to set aside the judgment and render judgment quieting title in the plaintiffs.

By the Court: It is so ordered.