## NATIONAL BANK OF COMMERCE v. ANDERSON.

(Circuit Court of Appeals, Ninth Circuit. June 25, 1906.)

No. 1,288.

INDIANS—INDIAN LANDS—SALE—DEPOSIT OF PROCEEDS.

Act Cong. May 27, 1902, c. 888, § 7, 32 Stat. 275, authorizes the adult heirs of any deceased Indian to whom allotted lands have been patented to sell inherited lands subject to the approval of the Secretary of the Interior, and provides that when so approved full title shall pass to the purchaser, the same as if a final patent without restriction on the alienation had been issued to the allottee. Held, that where lands were allotted to an Indian citizen under Allotment Act 1877, restraining alienation for 25 years, the act of 1902 did not vacate the trust of such lands held by the United States, but, on the sale of the lands with the consent of the Secretary of the Interior by the heirs of the deceased allottee, the trust attached to the proceeds, which was only payable to such heirs under rules prescribed by the Interior Department.

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Jesse A. Frye and Alfred E. Gardner, for plaintiff in error.
H. P. Burdick and R. E. Evans, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The defendant in error, as the assignee of one Henry Taylor, an Indian, brought this action to recover from the plaintiff in error the sum of $1,830; the same being the share of said Henry Taylor in the proceeds derived from the sale of allotted land in the Yakima Indian reservation. The sale was made by the heirs of the deceased allottee, James Taylor, and the money was deposited with the plaintiff in error to the credit of said

Henry Taylor, to be paid to him in accordance with certain rules and regulations promulgated by the Secretary of the Interior and the Commissioner of Indian Affairs. The sale was had under the authority of section 7 of the act of Congress of May 27, 1902 (32 Stat. 275, c. 888), which provides as follows:

"That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in case of minor heirs their interests shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee. All allotted land so alienated by the heirs of an Indian allottee and all land so patented to a white allottee shall thereupon be subject to taxation under the laws of the state or territory where the same is situate: Provided, that the sale herein provided for shall not apply to the homestead during the life of the father, mother, or the minority of any child or children."

The cause was submitted to the Circuit Court upon the pleadings and an agreed statement of the facts. Thereupon judgment was rendered for the defendant in error for the recovery of said sum and costs.

The question arising upon the writ of error is whether the proceeds of such a sale are payable directly to the heir of the deceased allottee, or are to be held in trust for his benefit, and paid to him in such sums as meet the approval of the Secretary of the Interior and the Commissioner of Indian Affairs. It is admitted that Henry Taylor is a citizen of the United States, is an Indian of the Puyallup tribe, lives his own independent life, and is not dependent upon the government nor under official control. The land which was sold was allotted to James Taylor under the General Allotment Act of 1887. That act declared that the land should not be alienated by the allottee within a period of 25 years from the date of the allotment. Under the terms of the act the allottee was allowed the use and occupation of the land, and the only limitation upon his title was the restriction against alienation within the specified period. The plaintiff in error contends that the proceeds of the sale took the place of the land upon which there had been restriction against alienation, and that the government of the United States as the guardian of Henry Taylor had the power and authority to exercise supervisory control over the money. The defendant in error contends that the act of May 27, 1902, removed that restriction as to lands of a deceased allottee by expressly declaring that the adult heirs of such an allottee may sell and convey the lands inherited from such decedent, that the power to sell is thus expressly vested in the heirs and is not given to any officer of the government of the United States, that the power to sell and convey implies the power to receive the proceeds of the sale, that Congress might have imposed restrictions upon the use of the money, and might have required that the money be held in trust for the heirs of such deceased allottees, but that it has not seen fit to do so. It may be admitted that such was the contemporaneous construction placed upon the act by the Secretary of the Interior and the

Commissioner of Indian Affairs. In their rules promulgated on October 2, 1902, it was provided that the consideration money of such sales should be deposited in a bank or with a United States Indian agent "to be paid to the grantors or their order upon presentation of the deed duly approved by the Secretary of the Interior or by the President." It was not until September 16, 1904, that amended rules were promulgated, requiring that all proceeds of such sales be deposited in United States depositories to the credit of the heirs and subject to their checks in amounts of $10 per month with the approval of the agent in charge and in larger amounts only when authorized by the Commissioner of Indian Affairs. The heirs of James Taylor, in order to effect the sale, expressly assented to the terms of the amended rules. That assent was expressed in a supplemental petition which they were required to make, and which was presented in compliance with a letter to Henry Taylor from the superintendent of the Yakima Indian reservation, notifying him that such supplemental petition must be signed before the land could be sold and that otherwise the Secretary of the Interior would not approve the sale. The plaintiff in error contends that this requirement of assent to the amended rules was not authorized by law, that it can have no binding effect upon Henry Taylor or his assignee, and that conditions in an executory agreement or contract inserted at the dictation of officers of the government colore officii and in excess of lawful authority are void, citing United States v. Humason, 6 Sawy. 199, Fed. Cas. No. 15,421, and United States v. Mynderse, 11 Blatchf. 1, Fed. Cas. No. 15,851.

The contemporary construction placed upon an act of Congress and adhered to and followed by the head of the department to whom is intrusted its enforcement is in doubtful cases generally persuasive argument in favor of such construction; but here the first construction was adhered to but for a short period of time, and the new construction is entitled to as much consideration as was the first. In arriving at the intention of Congress in enacting the statute, it is important to bear in mind prior legislation and the declared policy of protection which the government has pursued in dealing with the Indians and their lands. The purpose of the statute evidently is that lands inherited from deceased allottees by heirs who had and were living upon allotments of their own, might be sold and converted into money, rather than remain untilled and unoccupied. It may be admitted that if the intention of the statute is to terminate the trust as to all lands so sold and to give the proceeds to the heirs free from restriction, the Secretary of the Interior had not the power to frustrate that intention in this instance by imposing the terms which were inserted in the petition for leave to sell, and that such terms, notwithstanding that they were assented to by the petitioners, were not binding upon them. But was it the intention of Congress to terminate the trust? There is in the act itself no express declaration of such an intention. The statute provides that the lands may be sold with the consent of the Secretary. It thus permits a change in form of the trust property from land to money. This change may be effected

only with the consent of the trustee represented in the person of the Secretary of the Interior. No citation of authority is needed to sustain the general doctrine that into whatever form trust property be converted, it continues to be impressed with the trust. That doctrine must be applied to the present case in the absence of the expressed intention of Congress to terminate the trust. We find in the act no ground for saying that such was the intention. The act, while it provides that the land may be sold, does not provide for the payment of the proceeds to the heirs of the deceased allottee, nor does it remove any of the restrictions upon the use and enjoyment of the trust property nor withdraw the property from the control of the Secretary of the Interior. We construe the act as expressing the intention of Congress, not to end the trust but to permit a change of the form of the trust property. The property being held in trust by the United States for a period which had not yet expired and which period was subject to further extension by the President, the intention to terminate the trust must be found to be clearly expressed in order to warrant us in holding that the trust does not follow the property in its changed form. Henry Taylor is, it is true, a citizen of the United States, and has severed his tribal relation. His interest in allotted lands, however, whether as an original allottee or as the heir of a deceased allottee is as much affected by the trust imposed upon it for his protection as is the similar interest of any Indian who has not been made a citizen, and who has not severed his tribal relation. The granting of citizenship does not affect the character of the title to land allotted to the Indian, nor is the restriction against alienation inconsistent with citizenship. Beck v. Flournoy Live Stock & Real Estate Co., 65 Fed. 30, 12 C. C. A. 497; United States v. Flournoy Live Stock & Real Estate Co. (C. C.) 69 Fed. 886; United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532.

Since writing the above our attention has been directed to the case of United States v. Thurston County, 143 Fed. 287, in which the Circuit Court of Appeals for the Eighth Circuit construed the statute of May 27, 1902, as we have construed it.

The judgment is reversed, and the cause is remanded, with instructions to enter a judgment for the plaintiff in error.