UNITED STATES v. HINKLE et al.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1919.)

No. 5167.

1. INDIANS ⊜⇒15(1)—LANDS; REGULATION OF MINERAL RENTS AND PROFITS OF INDIAN LANDS IN CONTROL OF SECRETARY OF THE INTERIOR.

Under Act April 26, 1906, c. 1876, §§ 19, 20, and Act May 27, 1908, c. 199, § 2, and the regulations thereunder, the exclusive custody and control of mineral rents and profits derived from restricted lands of full-blood tribal Indians of the Five Civilized Tribes is vested in the Secretary of the Interior as a trust fund, separate and distinct from the trust estate in the land itself, and the right to such rents and profits accruing during the term of restriction cannot be conveyed by the allottee or his heir.

2. INDIANS ⊜⇒27(7)—IN SUIT FOR CANCELLATION OF CONVEYANCE OF MINERAL LANDS, ACCOUNTING FOR PROFITS PROPER.

The United States, in a suit for cancellation of conveyances of Indian lands made in violation of restrictions upon their alienation, may have an accounting of mineral rents and profits unlawfully received by defendants.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against John Hinkle and others. Decree for defendants, and complainant appeals. Reversed.

W. P. McGinnis, U. S. Atty., and Alvin F. Molony, Sp. Asst. U. S. Atty., both of Muskogee, Okl.

Farrar L. McCain, Edward H. Chandler, Gray Carroll, and H. D. Mason, all of Tulsa, Okl., and J. R. Cottingham and S. W. Hayes, both of Oklahoma City, Okl., for appellees.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. [1] This action was originally commenced by the United States on January 2, 1909, for the purpose of canceling a real estate mortgage executed March 16, 1908, by J. S. Mullen to John Hinkle, on real estate situated in Carter county, Okl. This land had theretofore been allotted as a portion of the surplus allotment of Wallace Cash, a full-blood Choctaw citizen and allottee enrolled opposite No. 2871 upon the final roll of citizens of the Choctaw Tribe of Indians as an Indian of the full blood, pursuant to a selection made by said allottee on November 24, 1903.

A patent for the land was issued in the name of said Wallace Cash December 14, 1905. Hinkle filed a demurrer to the complaint, which was overruled. November 20, 1914, Mullen and Hinkle answered. December 23, 1914, the United States filed an amended and supplemental complaint, wherein it was alleged that Wallace Cash

died on or about December 29, 1903, leaving as his sole and only heir at law, his daughter, Sophia Cash, a full-blood Choctaw Indian citizen, enrolled as such opposite roll No. 2872 upon the final roll of citizens of the Choctaw Tribe. By the amended supplemental complaint the Crystal Oil Company, M. Gorman, Twin State Oil Company, C. L. Anderson, and Sinclair Gulf Oil Company were made defendants, and about 14 different deeds, leases, and assignments and other claims affecting the title to the land in controversy were sought to be canceled. It appears from the record that at some time during the proceedings the case was dismissed as to Hinkle and as to the mortgage sought to be canceled by the original complaint. The real estate in controversy at the time of the trial below was the south half of the northeast quarter, the northwest quarter of the northwest quarter of the southeast quarter, and the north half of the northeast quarter of the southeast quarter, all in section 4, township 4 south, range 3 west, Carter county, Okl. Among the instruments sought to be canceled by the supplemental amended complaint were a deed for the above land executed by Sophia Cash to E. O. Butler on or about August 19, 1904, a conveyance by Butler to J. P. Mullen and others, and a conveyance by the latter to the defendant J. S. Mullen; also a deed by Sophia Cash, dated September 22, 1913, to said defendant J. S. Mullen.

On February 3, 1916, the defendants filed what is called in the record a motion to dismiss. The ground of this motion was that Sophia Robert, née Cash, had on January 5, 1916, conveyed the land in controversy for a consideration of $10,000 to the defendant J. S. Mullen and that said deed of conveyance had been duly approved by the county court of McCurtain county, Okl.; the court having jurisdiction of the settlement of the estate of Wallace Cash, deceased. June 8, 1917, the defendants Anderson and M. Gorman filed separate amended answers in which the deed of January 5, 1916, was pleaded as a defense. July 3, 1917, the Crystal Oil Company and Sinclair Gulf Oil Company filed their separate amended answers, setting up the same deed as a defense. September 18, 1917, the Twin State Oil Company filed its separate amended answer making the same defense as the other defendants. October 8, 1917, the United States filed a replication to the separate amended answers of the defendants. In this replication the United States attacked the conveyance of January 5, 1916, by Sophia Robert, née Cash, to J. S. Mullen, as fraudulent and void for reasons specified.

On the same date the case came on for trial, upon the request of the defendants that the court hear and determine the defense set up in the amended answers as a plea in abatement to the action, and dispose thereof before a trial of the principal case. The record shows that what was meant by this language was that the court proceed to try the validity of the deed of January 5, 1916. Pursuant to the request of defendants the court proceeded to decide that question. The defendants introduced in evidence the deed of conveyance for the land in controversy from Sophia Robert, née Cash, to J. S. Mullen. his heirs and assigns, for the expressed consideration of $10,000, "to-

gether with all claims and demands for rents, revenues, and profits of whatsoever kind and description that have theretofore accrued from said land to J. S. Mullen, his grantees or lessees"; also duly certified copies of a petition filed by Sophia Robert, née Cash, in the county court of McCurtain county, Okl., praying that said deed might be approved, and of the order of said court approving said deed. The United States introducing no testimony, the court entered a judgment dismissing the supplemental complaint and the cause of action alleged therein, to which judgment the United States excepted and appealed to this court from the same.

Counsel for the United States concede that the court did not err in adjudging that the deed of Sophia Robert, née Cash, of January 5, 1916, to J. S. Mullen, was a valid conveyance, but insist that the court erred in not retaining jurisdiction of the action for the purpose of hearing the case for an accounting of the mineral rents and profits received by the defendants from the lands in controversy down to January 5, 1916, the date of the last conveyance. The original complaint contained no allegation with reference to rents and profits, nor was there any prayer for a receiver or an accounting. The supplemental complaint, however, did ask for an accounting of the rents, profits, royalties, and revenues derived from said lands while in the possession of said defendants, and a receiver was asked for to take charge of the land and collect such rents, royalties, and revenues derived therefrom by reason of the operation of said land by the defendants for oil and gas. The complaint also contained allegations that the defendant Mullen and his lessees had been in possession of the land since 1904, and had collected and received the rents and profits issuing from the said lands.

We are of the opinion, from the recital in the judgment of the court as to the question that was taken up for trial, that the trial did not involve a trial of the whole case, and that therefore the United States could not be said to be in default in not offering any proof upon the subject of the accounting. It does not appear that a receiver was ever directly applied for, otherwise than in the prayer of the complaint, or that a receiver was ever appointed. In the attitude now assumed by counsel for the United States, we take it that the title of the land in controversy passed by the deed of January 5, 1916, from Sophia Robert, née Cash, to J. S. Mullen; therefore the right of a receiver to take charge of the land is gone, if any ever existed. The right to an accounting, however, for the mineral rents and profits received by the defendant Mullen and his codefendants, still remains, unless the language quoted from the deed of conveyance had the effect to deprive Sophia Robert, née Cash, and the United States, of all right to an accounting for the mineral rents and profits alleged to have been unlawfully received by the defendants from 1904 to January 5, 1916.

We are of the opinion, however, that under sections 19 and 20 of the Act of April 26, 1906, c. 1876 (34 Stat. 137), and section 2 of the Act of May 27, 1908, c. 199 (35 Stat. 312), and the regulations of the Secretary of the Interior promulgated July 7, 1906, June 11, 1907,

and April 20, 1908, the exclusive custody and control of mineral rents and profits derived from restricted lands of full-blood tribal Indian citizens of the Five Civilized Tribes is vested in the Secretary of the Interior, subject only to such rules and regulations as he may prescribe, as an independent trust fund, separate and distinct from the trust estate in the land itself, and that the rules and regulations referred to show that the Secretary has elected to administer this trust and to retain the custody and control of such funds "until such time or times as the payment thereof is considered best for the benefit of said lessor, or his or her heirs" (Reg. Sec. Int.), and therefore the language quoted from the conveyance of January 5, 1916, of Sophia Robert, née Cash, to J. S. Mullen, was ineffective to release the grantee, Mullen, and the other defendants, from the claim of the United States in behalf of the grantor to the mineral rents and profits which had been unlawfully received by the defendants prior to said date; nor did the approval of the county court affect the matter of mineral rents and profits, as that was a matter beyond its jurisdiction. It was determined by the Supreme Court of the United States in the case of Gabe E. Parker, Superintendent, et al., Appellants, v. Eastman Richard and R. D. Martin, Coadministrators, etc. (June 2, 1919) 250 U. S. 235, 39 Sup. Ct. 442, 63 L. Ed. 954, that the proviso contained in the act of 1908 (35 Stat. 312), providing "that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee," was a restriction upon the conveyance of the land, notwithstanding the other language of section 9, which provides that the death of any allottee should operate to remove all restrictions upon the alienation of the allottee's land.

[2] So far, therefore, as the present record is concerned, the land in controversy was restricted land down to January 5, 1916. Gannon v. Johnson, 243 U. S. 108, 37 Sup. Ct. 330, 61 L. Ed. 622; Brader v. James, 246 U. S. 88, 38 Sup. Ct. 285, 62 L. Ed. 591; Talley v. Burgess, 246 U. S. 104, 38 Sup. Ct. 287, 62 L. Ed. 600. This being so, the defendants must account to the United States for any mineral rents and profits unlawfully received by the defendants or either of them during that period. We say unlawfully received, in view of the fact that on the question of accounting the validity of the conveyances other than that of January 5, 1916, may arise. The last restriction on the alienation of the land was removed by the sale thereof with the approval of the county court. Whether Sophia Robert, née Cash, would be now entitled to the mineral rents and profits arising from the land during the period of restriction, if they were in the possession of the Secretary of the Interior, or whether the Secretary could retain them "until such time or times as the payment thereof is considered best for the benefit of said lessor or his or her heirs," we need not determine, as we are clearly of the opinion that the United States may, in a suit to cancel conveyances made in violation of restrictions upon the alienation of Indian lands, have an accounting of the mineral rents and profits unlawfully received by the defendants; the disposition of the same to be determined later, if any such rents and profits

are recovered. In this connection we may properly quote from the opinion in Parker v. Richard et al., supra, as follows:

"The heir is a full-blood Indian, as was the allottee, and is regarded by the act as in need of protection, as was the allottee. In the absence of some provision to the contrary, the supervision naturally falls to the Secretary of the Interior. R. S. §§ 441, 463 [Comp. St. §§ 681, 716]; West v. Hitchcock, 205 U. S. 80, 85 [27 Sup. Ct. 423, 51 L. Ed. 718]. And see Catholic Bishop of Nesqually v. Gibbon, 158 U. S. 155, 166 [15 Sup. Ct. 779, 39 L. Ed. 931]."

Just when the United States shall cease to sustain the relation of guardian to this full-blood Indian seems, under the decisions, a matter for Congress to decide. Brader v. James, supra; United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192; Tiger v. Western Investment Co., 221 U. S. 286, 316, 31 Sup. Ct. 578, 55 L. Ed. 738; Heckman v. United States, 32 Sup. Ct. 424, 56 L. Ed. 820. The rules and regulations of the Secretary of the Interior as to the collection, control, and custody of mineral rents and profits, made within the power granted by the acts of April 26, 1906, and May 27, 1908, supra, have the force and effect of law upon the subject, and persons dealing directly with a tribal Indian in violation thereof cannot retain the fruits of such unlawful agreement. Heckman v. United States, supra; United States v. Eaton, 144 U. S. 688, 12 Sup. Ct. 764, 36 L. Ed. 591; Wilkins v. United States, 96 Fed. 837, 37 C. C. A. 588; United States v. Gray, 201 Fed. 291, 119 C. C. A. 529; United States v. Law, 250 Fed. 218, 162 C. C. A. 354.

It results from what has been said that the decree below should be reversed, and a decree entered establishing the validity of the deed of January 5, 1916, from Sophia Robert, née Cash, to J. S. Mullen, so far as it conveys the title to the land in controversy, but without prejudice to the right of the United States to have an accounting in this action as to the mineral rents and profits unlawfully received by the defendants, or either of them.

And it is so ordered.