### UNITED STATES v. MOORE.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1922.)

No. 5635.

1. **Indians ⊕16(7)—United States may recover royalties received under illegal assignment by Indian.**

   The United States may maintain an action to recover royalties paid to defendant pursuant to an assignment made by an Indian of royalties to accrue under a mining lease on a restricted allotment.

2. **Indians ⊕16(7)—Right of United States to maintain suit for protection of allottee not affected by termination of restricted period.**

   The right of the United States to maintain an action to recover mining royalties illegally obtained from an Indian allottee during the restricted period *held* not affected by the fact that such period has expired.

3. **Indians ⊕16(7)—Mining royalties obtained from an allottee under an illegal assignment held recoverable.**

   Where an Indian allottee made an illegal assignment of royalties to accrue under a mining lease, the fact that the royalties were not paid to the assignee until after they accrued and had become personal property *held* not to validate such payments.

4. **Indians ⊕15(1)—Duty of government to protect allotment from alienation not dependent on civil status of allottee.**

   The duty of the United States to protect an allotment from alienation during the restricted period is not dependent on the citizenship or noncitizenship of the allottee.

5. **Judgment ⊕702—Suit by United States to protect land from alienation not barred by judgments to which it was not a party.**

   An action by the United States to protect allotted land from alienation is not barred by judgments of state courts in suits between the allottee and others, to which it was not a party.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the United States against James K. Moore.. Judgment for defendant, and plaintiff brings error. Reversed.

For opinion below, see 261 Fed. 523.

L. K. Pounders, Sp. Asst. U. S. Atty., of Bristow, Okl. (C. W. Miller, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Charles B. Mitchell of Miami, Okl. (Seymour Riddle and Dennis H. Wilson, both of Miami, Okl., on the brief), for defendant in error.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

COTTERAL, District Judge. This action was brought by the United States to recover of James K. Moore $40,061.44, which it is alleged he collected and retained by virtue of an assignment to him by Wattah-nah-zhe, (otherwise known as Mrs. Francis Q. Goodeagle), a fullblood Quapaw Indian, of one-half of the royalties to accrue from mining leases executed by her of her restricted allotment of 200 acres, in the Quapaw Indian Reservation, now a part of Ottawa county, state of Oklahoma. It is specified in the petition, filed September 25, 1917, that the allotment was made pursuant to the act of Congress approved March 2, 1895 (28 Stat. 907), by which and her patent, dated September 26, 1896, she was incapable of alienating the land for 25 years, that the assignment of royalties was violative of such restriction, and that the defendant received the royalties from ore production on the land between July 18, 1907, and April 10, 1915, and appropriated the same to his own use.

After unsuccessfully demurring to the petition, the defendant answered, pleading a general denial, incapacity of the government to maintain the action, former adjudications, the payment of royalties after severance of the ores, and statutes of limitation.

The case was tried upon an agreed statement of facts, from a consideration of which the trial court found and rendered judgment in favor of the defendant. A written opinion was filed in which the views of the court were expressed, and authorities were analyzed and distinguished. The agreed statement discloses the facts as follows:

The allotment was made, patent therefor was issued as stated in the petition, and further the allottee never had any right to convey or lease the land except as provided in the act June 7, 1897 (30 Stat. 62). There were two leases. The first was of date, March 31, 1906, to the Baxter Royalty Company of 160 acres, for 10 years, reserving a royalty of 5 per centum. This land was re-leased by the company on July 9, 1907, to Robinson and Harvey, for the period expiring June 13, 1917. The second lease was made to them May 22, 1907, of the remaining 40 acres, for 10 years with the like royalty. On July 18, 1907, the allottee, joined by her husband, executed and delivered for a consideration of $1,000, the receipt of which was acknowledged, an assignment of one-half the royalties to become due and payable to them "upon all lead, jack, and other ores of whatsoever kind which are, or may be mined upon and sold from" the allotment "under and by virtue of any and all leases now made and properly recorded and

dated on or since May 22, 1907, and executed by first parties hereto, or under and by virtue of any other lease which said first parties may hereafter execute during the life of said lease or leases, not to exceed 10 years from date hereof," whether the ores should be "mined by leases of first parties," or by them in person. It was further stipulated in the assignment that the first parties authorized and directed their lessees and all other persons liable to first parties for royalties to be paid for ore mined and sold to pay one-half thereof "as same becomes due the first parties" to Moore "on all moneys received from ores and minerals mined and sold from said lands directly to said second party at the places or place named for payment in said lease."

At the date of the assignment and payment of the consideration there had been some drilling on the land, some of the holes showed ore, and the defendant did not know of any assays of the cuttings therefrom, but knew they showed ore, "there was only one foot or so into a light grade of ore," progress being hampered by water. He never had possession of the land, or took part in the mining operations.

When the royalties first began to accrue the 5 per cent. royalty was paid to the allottee, and she paid the defendant, on July 7, 1907, a sum equal to one-half of the same, upon ores taken and sold, amounting to $3,462.37.

Four suits were brought in the state district court of Ottawa county, Okl. The first was begun July 7, 1909, by the allottee against the defendant for a cancellation of the assignment, resulting in a judgment in favor of the defendant, which was affirmed on appeal by the state Supreme Court. Pending this suit, the Baxter Royalty Company withheld payment of the assigned royalties, and the other lessees, Robinson and Harvey deposited at bank in allottee's name the assigned royalties, subject to order of court. The next suit was brought, June 13, 1911, by the defendant against the allottee, her husband, and the lessees to obtain a judgment in his behalf for the royalties due him, for a discovery and a receiver to hold the funds. The allottee, by answer and cross-petition, sought a cancellation of the assignment. The result was a judgment in favor of Moore, and by stipulation the receiver paid him in satisfaction, $3,550.60. The third suit was also brought by Moore on June 13, 1911, to recover the said deposit of Robinson and Harvey. The allottee answered, praying a cancellation of the lease. On April 21, 1913, on stipulation of counsel, the cause was dismissed, and the funds on deposit were paid to Moore, amounting to $17,882.10. The balance sued for in this action was by consent of the allottee paid to him by Robinson and Harvey, the last payment being about April 10, 1915. The fourth suit was brought by the allottee against Moore on May 25, 1915, in which she alleged the invalidity of the assignment and sought a recovery of royalties amounting to $40,061.44, as paid to him. He answered that the assignment had been adjudged valid in the first suit, judgment was rendered in his favor, and an appeal is now pending in the State Supreme Court.

[1] The inquiry which has precedence is whether the government

is entitled to maintain this action in behalf of the allottee for the royalties paid to the defendant. Clearly, we think, our answer should be in the affirmative. It was decided in United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844, involving the allotments of the Quapaw Indians, that the United States has capacity to sue for the purpose of setting aside conveyances or contracts violative of restrictions imposed by Congress; that an assignment of royalty to accrue under a mining lease was of an estate remaining with the lessor, and was prohibited by the act of March 2, 1895, which in terms declared the allotments inalienable for 25 years. Here there is no question that the assignment was of royalties to be derived from the mining of ores and necessarily to accrue in the future. As was also held in the Noble Case, the defense is not well taken that payment to the assignee was to consist of moneys equal to a percentage of the market value of the minerals.

[2] With these rulings established, we find no difficulty in holding that the government may maintain this action for the recovery of moneys paid to the defendant. Its interest is not pecuniary, but governmental. Heckman v. U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820. So it is with respect to this allotment. On principle, the action is not essentially different from one brought to recover the land itself. The authority to sue necessarily arose from the law, on the ground that the royalties were illegally obtained and there was no other remedy available. It is sustained on like reason as in the case of United States v. Gray, 201 Fed. 291, 119 C. C. A. 529, decided by this court, where the action was for the recovery of damages for breach of a lease made by the allottee. Furthermore, we cannot agree that the government can be relieved of its duty because the restriction period has expired. The duty was assumed because these Indians were under national tutelage, and the Congress expressly declared they might not dispose of their lands for a given period. Once the duty was laid upon the government to preserve the land intact and as a part of it the profits to accrue from it, that duty must remain until performance, although postponed until the disability of the allottee was removed as to future dealing with the property. It was an obligation of protection against acts done within the designated period, and not merely of assistance within it. Mere inaction, therefore, cannot be construed as absolving the government from performance.

[3] It is insisted that the payments made to the defendant were of accrued royalties, and hence of personal property of the allottee, and within her control. That this contention is unavailing was made clear in the Noble Case. The claim to the royalties was wholly derived from the illegal assignment, and was dependent upon it, and therefore the subsequent appropriation of the funds could not be justified. Furthermore, the wisdom of the restriction is well illustrated by the improvidence of the allottee in contracting upon an inadequate consideration for the transfer of the royalties. In our view, a recovery in this case cannot be defeated by the fact that the payments were made to the defendant after the royalties accrued.

[4] Nor is the citizenship of the allottee material. The restriction was not made to depend upon her civil status, but was impersonal and was laid upon the land, which the government had the duty to preserve against alienation. Bowling v. U. S., 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080.

[5] The adjudications between the allottee and the defendant in error and the payments they authorized do not constitute any defense in this action. The United States was an indispensable party to any litigation wherein relief was sought that would impair its governmental function to protect the allotment against alienation. Heckman v. U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820. It was held in an action between these parties, reported in 36 Okl. 631, 129 Pac. 877, that the assignment of royalty was not a sale of an interest in the land, upon the authority of U. S. v. Abrams (C. C.) 181 Fed. 847, and U. S. v. Noble, 197 Fed. 292, 116 C. C. A. 654. But those decisions were overruled in the Noble Case and are not authoritative.

No other questions require special notice. We are of the opinion that the United States is entitled to recover of the defendant in error all royalties and moneys received by him under or by virtue of the assignment in question of royalties provided for in the leases of the allottee, and that it was error to render judgment in this case in his favor. For this reason, the judgment herein is reversed, and the District Court is directed to grant a new trial of this cause.

Reversed.

HOOK, Circuit Judge, presided at the hearing of this case and concurred in the result, but died before the opinion was prepared.