## SUNDERLAND v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 5, 1923.)

No. 6121.

1. **Indians ⬦15(2)—Secretary held empowered to place restrictions on disposal of lands purchased for Indian.**

Under Act May 27, 1908, § 1, the Secretary of the Interior had authority to make regulation 20, providing that, where land is purchased for an Indian the superintendent shall cause the land to be conveyed to the Indian, with a clause restricting a sale by the Indian without the approval of the Secretary of the Interior.

2. **Constitutional law ⬦62—Indians' ⬦15(2)—Act authorizing Secretary of the Interior to make regulations valid.**

Act May 27, 1908, § 1, authorizing the Secretary of the Interior to make rules and regulations concerning alienation of Indian lands, is not invalid as a delegation of legislative power.

3. **Indians ⬦6—Congress may legislate as to Indians in state.**

Congress is not without power to legislate for the protection of Indians within a state.

4. **Indians ⬦6—Congress may legislate for protection of Indians.**

Congress may enact laws for the protection of the Indians, and the government is not limited to do so by treaty.

5. **States ⬦9—Enabling Act of Oklahoma held not to prevent congressional protection of Indians.**

The Enabling Act of Oklahoma does not affect the power of Congress to legislate for protection of Indians and their property within that state, especially as such power is expressly reserved by paragraph 3, § 3, of that act.

6. **Judgment ⬦702—Decree quieting title to Indian land not binding on government, not a party.**

A decree of a state court quieting title to restricted Indian lands is not binding on the government, which was not a party to the suit.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

·Action by the United States against J. W. Sunderland. From the decree, defendant appeals. Affirmed.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. M. Springer, of Tulsa, Okl. (E. G. Wilson, of Tulsa, Okl., on the brief), for appellant.

O. H. Graves, Sp. Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for appellee.

Before STONE, Circuit Judge, and TRIEBER and JOHNSON, District Judges.

TRIEBER, District Judge. The United States instituted this action to cancel and set aside three leases and a conveyance of 160 acres of land, made to appellant by Nathaniel Perryman, a half-blood citizen of the Creek Nation of Indians, properly enrolled, and also a decree of the superior court of Tulsa county, state of Oklahoma, rendered by default against Nathaniel Perryman, which quieted appellant's title to the premises sued for in this action.

The material allegations in the complaint are that Perryman, a half-blood citizen of the Creek Nation of Indians, properly enrolled, had allotted to him certain lands designated as his homestead, and which were under restrictions of alienation; that, pursuant to and under the rules and regulations prescribed by the Secretary of the Interior, said homestead allotment was sold, the proceeds of said sale being retained by the Secretary of the Interior, to be disbursed under his orders for the benefit of the allottee; that with a portion of the funds thus derived the Indian Department purchased for and on behalf of the said Nathaniel Perryman the land in controversy; that the deed of conveyance for said land, in conformity with the rules and regulations of the Secretary of the Interior, contains in the habendum clause, that it is:

"Subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

It is then charged that, notwithstanding the restricted character of said land, the defendant obtained from Nathaniel Perryman three separate leases therefor, and an absolute deed of conveyance for the land, without the consent and approval of the Secretary of the Interior. By an amendment to the complaint it is charged that the defendant, Sunderland, had obtained a decree in the superior court of Tulsa county, Okl., quieting title in the defendant Sunderland and the lands involved in this action, but to which action the United States government was not a party.

A motion of appellant to dismiss the complaint was by the court overruled, whereupon he filed his answer. The answer admits the citizenship and enrollment of Perryman, the conveyance of the land in controversy to Perryman, with the restrictive clause as charged in the complaint, the execution by Perryman of the leases and the deed of conveyance to appellant, as charged, and pleads as defense Perryman's right to make the leases and the deed, and also pleads the decree of

the superior court of Tulsa county, Okl.; a certified copy of that decree having been introduced in evidence.

Upon a hearing the court below rendered a decree denying relief affecting the leases, but set aside and canceled the deed to appellant, and the decree of the superior court of Tulsa county, state of Oklahoma, and enjoining appellant from setting up any claim of title to said land or any part thereof.

As the United States did not appeal from the part of the decree refusing to cancel the leases, we are only concerned with the part of the decree canceling the deed of conveyance of Perryman to appellant. The undisputed facts established the truth of all the allegations, and the only questions involved are whether the rules and regulations of the Secretary of the Interior were authorized to be made, and, if authorized by Congress, whether Congress had the power to authorize them, and the effect of the decree of the superior court of Tulsa county.

The act of Congress under which the land in controversy is claimed to be restricted, is the act of May 27, 1908, c. 199, 35 Stat. 312. The part of that act material to a determination of the issues involved herein, is in section 1, and it is only necessary to quote the following part of that section.

"Section 1. That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full bloods, and enrolled mixed bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

By authority of the provision authorizing the Secretary of the Interior to make rules and regulations, he prescribed, among others, the following:

"6. When, however, the Secretary of the Interior finds it to be for the best interest of any applicant that all or part of his restricted lands should be sold with conditions concerning terms of sale and disposal of the proceeds, he may remove the restrictions to become effective only and simultaneously with the execution of the deed by said applicant to the purchaser. Before said deed is executed the designated tract or tracts of land shall be sold upon such terms as the Secretary of the Interior may in each case specifically direct. Whenever the Secretary of the Interior so directs the superintendent for the Five Civilized Tribes will cause a description of the land with necessary information, to be posted at his office, and so far as practicable, on the bulletin board at the court house of each county within the territory occupied by the Five Civilized Tribes, and also at the office of each field clerk for a period of not less than thirty days."

"11. The proceeds of such sales shall be held by said superintendent for the Five Civilized Tribes in his official capacity, and be disbursed for the benefit of the respective Indians."

"20. In any case where lands are purchased for the use and benefit of any citizen of the Five Civilized Tribes of the restricted class, payment for which is made from proceeds arising from the sale of restricted allotted land, or other moneys held under the control of the Department of the Interior, the superintendent for the Five Civilized Tribes shall cause conveyance of such lands, to be made on form of conveyance containing an habendum clause against alienation or incumbrance until April 26, 1931, as follows: 'To have and to hold said described premises, unto the said grantee, ——— heirs and assigns, forever, free and clear and discharged of all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior.' "

When the Indian Department purchased the land in controversy with the moneys realized from the sale of Perryman's restricted homestead, it invested it in the land in controversy, executing a warranty deed to Perryman, containing the following restriction in the habendum clause:

"To have and to hold said described premises, unto the said grantee, his heirs and assigns, forever, free and clear and discharged of all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature, subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

[1] That under the provisions of section 1 of this act the Secretary of the Interior had the right to make regulation 20, and that such a restriction as is contained in the deed to Perryman is valid, has been determined by this court in United States v. Law, 250 Fed. 218, 162 C. C. A. 354, and under a similar act in United States v. Thurston County, 143 Fed. 287, 74 C. C. A. 425; by the United States Circuit Court of Appeals for the Ninth Circuit in National Bank of Commerce v. Anderson, 147 Fed. 87, 77 C. C. A. 259; and by Judge Rudkin in United States v. Yakima County (D. C.) 274 Fed. 115. But counsel for appellant insists that these cases have in effect been overruled by this court in United States v. Gray, 284 Fed. 103, and United States v. Ransom, 284 Fed. 108. But the only questions before the court in those cases were whether lands in the state of Oklahoma, subject to taxation by the state by reason of being owned by white citizens, became exempt from such taxation when purchased by the United States for an Indian ward, with funds realized from a sale of restricted lands belonging to an Indian; the deed containing a restriction like the one in the deed to Perryman. The court held that the land did not, by such a purchase, become exempt from taxation. Judge Lewis, speaking for the court, said:

"The sole controversy presented here is whether the lots, on being purchased by Lizzie Lewis [which were subject to taxation by the state], became exempt from taxation."

The learned Circuit Judge expressly held that the Thurston County and Law Cases were inapplicable on the facts to the cases before the court.

Another case relied on for appellant is McCurdy v. United States, 246 U. S. 263, 38 Sup. Ct. 289, 62 L. Ed. 706. But that case arose under the Acts of June 28, 1906 (34 Stat. 539), and April 18, 1912 (37 Stat. 86), which applied to the Osage Indians and differs materially from the Act of May 27, 1908, now under consideration. The court there held that the Secretary's authority could only be sustained on section 5 of the Act of 1912, and that section did not authorize him to make the regulation, which is similar to that in rule 20 involved in the instant case. The court referred to the Thurston County Case, distinguished it, but neither criticized nor expressed a doubt as to its correctness. The Law Case was decided later and Judge Booth, who delivered the opinion of this court in the Law Case, distinguished the McCurdy Case, holding that it is inapplicable to the Act of 1908, the Act herein under consideration

[2] It is next contended that, if Congress did vest such power in the Secretary of the Interior, that part of the act is unconstitutional. Counsel attack the constitutionality of this provision of the act on three grounds:

(1) That it is a delegation of legislation to the executive department, which is not permissible.

(2) That as these Indians are no longer residing in a territory of the United States, but in a state of the Union, Congress is without power to legislate for the protection of their property, but they must look to the state alone for it.

(3) That the national government can only deal with Indians by treaty and not by an act of Congress.

As to the contention that an act of Congress, vesting in the President or the head of an executive department the right to make rules and regulations, for the purpose of providing the details necessary to the enforcement of a statute, which regulations shall have the force of law, is a delegation of legislation, it is clearly without merit. That it may be done has been so frequently decided by the Supreme Court that it is unnecessary to cite authorities.

[3, 4] Nor is the contention that Congress is without power to legislate for the protection of Indians in a state tenable. Bowling v. United States, 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080; La Motte v. United States, 254 U. S. 570, 41 Sup. Ct. 204, 65 L. Ed. 410, and authorities there cited. The concluding part of section 6 of the act expressly provides for it. It reads:

"Nothing in this act shall be construed as a denial of the right of the United States to take such steps as may be necessary, including the bringing of any suit and the prosecution and appeal thereof, to acquire or retain possession of restricted Indian lands, or to remove cloud therefrom, or clear title to the same, in cases where deeds, leases or contracts of any other kind or character whatsoever have been or shall be made contrary to law with re-

spect to such lands prior to the removal therefrom of restrictions upon the alienation thereof."

· That Congress may enact laws for the protection of Indians, and that the government is not limited to do so by treaties with them, is equally well settled. While for a long time the government conducted its dealings with Indians by treaties, this course was abandoned when it passed the Act of March 3, 1871, c. 120, 16 Stat. 566 (section 2079, Rev. St. [Section 4034, U. S. Comp. St.]) and the Act of March 3, 1885, c. 341, 23 Stat. 385, re-enacted as section 328 of the Penal Code (section 10502, U. S. Comp. St.). The constitutionality of these acts has been sustained, that of 1871 in Lone Wolf v. Hitchcock, 187 U. S. 566, 23 Sup. Ct. 216, 47 L. Ed. 299, and In re Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848, and the act of 1885 in United States v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228. In McCurdy v. United States, supra, it was held that Congress may reimpose restrictions on Indians, while national wards, although previously freed from restrictions. It is as much the duty of Congress as the guardian of Indians to protect them against being overreached by designing persons and protect them against their own ignorance and child-like inability to take care of their property, as long as, in the opinion of Congress, they are incompetent, as it is the duty of the state to protect its incompetents, regardless of the fact that they reside and their property is situated in a state. The change of form of the property does not deprive Congress of this power. Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; United States v. Thurston County, supra; United States v. Law, supra.

[5] The Enabling Act of Oklahoma (34 Stat. 267) does not change this. On the contrary by section 3 of paragraph 3 of that act, Congress expressly reserved that power. Gleason v. Wood, 28 Okl. 502, 114 Pac. 703.

[6] The decree of the state court against Perryman, an incompetent Indian of half-blood, and for this reason a ward of the Nation, the United States not being a party to the action, is void, and the court committed no error in enjoining appellant from claiming any rights under it. United States v. Moore (C. C. A.) 284 Fed. 86.

The decree of the court below was right and is affirmed.