## UNITED STATES v. BROWN et al.*

(Circuit Court of Appeals, Eighth Circuit. October 29, 1925.)

### No. 6924.

1. **Indians** ⬤⟿15(2)—**Purchaser of land without consent of Secretary of the Interior, in violation of provision against alienation in Indian's deed, took nothing.**

Where court permitted investment of royalties under departmental oil and gas lease covering allotment of full-blood minor Creek Indian in agricultural land, requiring deed to contain restriction on alienation prescribed by regulations of Interior Department, under Act Cong. March 27, 1908, c. 199, such restriction was valid, and subsequent grantees' taking conveyances without consent or approval of Secretary, took nothing.

2. **Indians** ⬤⟿15(1)—**Taxation of restricted Indian's lands held not to affect power of Congress to impose restrictions on alienation.**

That the lands of a full-blood Creek Indian, purchased with proceeds of restricted lands, are not exempt from local taxation, does not impair the power of Congress to impose restrictions on the alienation of such land.

3. **Indians** ⬤⟿15(2)—**Secretary of the Interior, permitting investment of royalties from restricted lands, may restrict alienation of lands purchased.**

The authority of the Secretary of the Interior, under Act May 27, 1908, c. 199, to withhold his consent to proposed investment of royalties derived from oil lease of Indian's restricted lands, includes authority to allow investment on condition that property into which proceeds are converted shall be impressed with a like control.

4. **Indians** ⬤⟿15(2)—**Conveyance of restricted lands without consent of Secretary of the Interior void, irrespective of good faith of purchaser.**

The good faith, motives, or considerations of one purchasing lands of an Indian, the alienation of which, without approval or consent of the Secretary of the Interior, is prohibited by his deed, *held* immaterial; the conveyance being void as against public policy.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action by the United States against Rosannah Brown and others. Judgment for defendants, and plaintiff appeals. Reversed, with directions.

O. H. Graves, Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

J. L. Hull, of Muskogee, Okl., and Frank Montgomery, of Eufaula, Okl. (N. A. Gibson, of Muskogee, Okl., West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Miller Tiger, a full-blood Creek Indian, received his allotment, and thereafter a departmental oil and gas lease was executed, covering the same. The royalties therefrom were paid to the superintendent and special disbursing agent for the Five Civilized Tribes. Later one Barclay Morgan and the appellee Rosannah Brown, as joint guardians of Miller Tiger, who was a minor, requested authority of the county court of Okmulgee county to invest the sum of $3,000 of these royalties in 160 acres of agricultural land for a home for said ward, alleging that this investment would be for the best interest of the ward and his estate. Upon hearing, the court authorized the purchase upon condition that the vendor should execute to the Indian a good and sufficient warranty deed in accordance with the rules and regulations prescribed by the Department of the Interior. It was required by the court that the deed should contain the following clause, following a form prescribed by the department for such conveyances:

"Subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect, or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

Pursuant to this arrangement, on October 24, 1915, a check was drawn by the superintendent for the Five Civilized Tribes for the sum of $3,000 upon the Miller Tiger fund and payable to the order of said guardians, and on the same day was delivered to them and by them deposited in their general guardianship account in bank. On the same day the guardians drew their check against said account in favor of the vendor and delivered it to him in payment of the purchase price of the land. In the meantime, on the 26th of July, 1915, the special form of deed had been executed in accordance with the conditions exacted by the department and by the court and had been recorded; it was delivered simultaneously with the payment of the purchase price. It will be seen, therefore,

that every act above described was part of one and the same transaction, which evidences the purpose to make the release of the funds conditioned upon and coincident with the retention of supervision. This was the purpose of the department, by which the controlling regulation was promulgated, and of the court, upon which, as a governmental agency, had been conferred jurisdiction of the subject-matter. Thereafter, in December, 1921, Miller Tiger and wife conveyed 80 acres of this land, to wit, the east half of the southwest quarter of section 24, township 11 north, range 11 east, Okmulgee county, Okl., to appellee Rosannah Brown. Miller Tiger, having attained his majority, had been released from guardianship; but the conveyance last described was not approved by the Secretary of the Interior. January 23, 1922, Rosannah Brown conveyed an undivided one-half interest in this tract to appellee Brotton, who, in turn, conveyed an undivided one-fourth interest to appellees King and Whitenton.

The government, by suit in the court below, sought to cancel the three conveyances last above described, and to quiet the title in Miller Tiger, subject to the restrictions imposed by law and the supervising control of the United States. In opposition thereto, it was contended that the Secretary of the Interior had no authority to invest royalties, derived from leases, in lands, and to impose a restriction against alienation of these lands; further, that the funds, having been paid by the superintendent for the Five Civilized Tribes to the guardians of Tiger, and by them intermingled with other funds, the control thereof by the Secretary terminated, and he had no further power of supervision over the funds, nor over any real estate in which the same might be invested.

To sustain their position appellees rely mainly upon McCurdy v. United States, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706, and upon the decisions of this court in United States v. Gray (C. C. A.) 284 F. 103, and United States v. Ransom (C. C. A.) 284 F. 108. While this precise situation, involving the identical relationship between the parties, has not been before the courts of last resort, nevertheless the principles announced by the Supreme Court and the Circuit Courts of Appeals in many decided cases furnish us dependable guidance. The act of Congress under which these lands were restricted is that of May 27, 1908. 35 Stat. 312, c. 199. Under authority conferred by that act to make rules and regulations, the Secretary

of the Interior, among others, promulgated the following:

"20. In any case where lands are purchased for the use and benefit of any citizen of the Five Civilized Tribes of the restricted class, payment for which is made from proceeds arising from the sale of restricted allotted land, or other moneys held under the control of the Department of the Interior, the superintendent for the Five Civilized Tribes shall cause conveyance of such lands, to be made on form of conveyance containing an habendum clause against alienation or incumbrance until April 26, 1931, as follows: 'To have and to hold said described premises, unto the said grantee, ——— heirs and assigns, forever, free and clear and discharged of all former grants, charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature, subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification, unless made with the consent of and approved by the Secretary of the Interior.'"

That regulation has received confirmation and approval in Sunderland v. United States (C. C. A. 8th Circuit) 287 F. 468, affirmed under the same title, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259. In the cases just cited the lands allotted to the Indian, and under restrictions as to alienation, were sold; the proceeds of said sale being retained by the Secretary of the Interior to be disbursed under his orders for the benefit of the allottee. With a portion of the funds thus derived the Indian Department had purchased for and on behalf of the Indian other lands. The deed of conveyance for said land, in conformity with the rule above set out, contained the condition therein prescribed that no alienation should be of any force and effect unless made with the consent of and approved by the Secretary of the Interior. In Sunderland v. United States, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259, the Supreme Court, in affirming the decree of this court, said:

"So long as the Indians remain wards of the government, the interposition of the strong shield of the federal law is justified, to the end that they be not overreached or despoiled in respect of their property of whatsoever kind or nature. * * * If Congress, in fulfillment of its duty to pro-

tect the Indians, whose welfare is the peculiar concern of the federal government, deems it proper to restrict for a limited time the right of the individual Indian to alienate land purchased for him with funds arising from the sale of other lands originally subject to a like restriction, we are not aware of anything which stands in the way. * * * Indeed, we think the authority of the Secretary to withhold his consent to the proposed investment of the proceeds subject to his control, includes the lesser authority to allow the investment upon condition that the property into which the proceeds are converted shall be impressed with a like control"—citing with approval United States v. Law, 250 F. 218, 162 C. C. A. 354; United States v. Thurston County, 143 F. 287, 290, 291, 74 C. C. A. 425; National Bank of Commerce v. Anderson, 147 F. 87, 90, 77 C. C. A. 259.

Appellees seek to make the distinction that in the Sunderland Case the lands were purchased with the proceeds of sale of allotted lands, and not with moneys accruing from a lease upon allotted lands, contending that the act of 1908, and the regulation made thereunder, has, in terms, no application to the latter case. United States v. Law, 250 F. 218, 162 C. C. A. 354, decided by this court, dealt also with the sale of a homestead and revestment of funds with restrictions affecting a new purchase. It confirmed authority in the government to hold proceeds and control their disposition in the same way that it had controlled the allotted lands, citing United States v. Thurston County, supra, which was cited also with approval in Starr v. Campbell, 208 U. S. 527, 30 S. Ct. 382, 54 L. Ed. 602, 17 Ann. Cas. 1167. In the latter case it was held that the consent of the President to a contract for cutting timber upon allotted land did not end his control over the matter, but that he might put conditions upon the disposition of the proceeds.

In United States v. Thurston County, 143 F. 287, 74 C. C. A. 425, this court held that the proceeds of the sales of allotted lands are held in trust by the United States for the same purposes as were the lands; that no change of form of property divests it of a trust. A substitute takes the nature of the original and stands charged with the same trust. It applied this rule to the money derived from the release of their rights of occupancy, as well as to the lands themselves.

In National Bank of Commerce v. Anderson, 147 F. 87, 77 C. C. A. 259, the Circuit Court of Appeals for the Ninth Circuit held that the sale of allotted lands with the consent of the Secretary of the Interior did not vacate the trust which attached to the proceeds under the rules prescribed by the Interior Department. In United States v. Gray et al., 201 F. 291, 119 C. C. A. 529, this court, speaking through Judge Sanborn, said:

"It has been and still is the policy of the United States to protect the property and the rights of the Indians under its control, and to teach them agriculture and the arts of civilized life. The Indian reservations, the funds derived from the lease of their right of occupancy to their lands, the lands allotted to the individual Indians, but still held in trust by the United States during the period of restriction upon alienation, the leases of these lands made by the Indian superintendents or agents on the terms and conditions fixed by the Secretary of the Interior and approved by him, * * * and the proceeds and income from all these, are the means by which the nation pursues its beneficent policy of protection and instruction and exercises its lawful powers of government."

And again, in United States v. Moore, 284 F. 86, we held that, once the duty is laid upon the government to preserve the land intact, and as a part of it the profits to accrue from it, that duty must remain until performance, although postponed until the disability of the allottee was removed as to future dealing with the property. In United States v. Hinkle, 261 F. 518, this court has recognized that mineral rents and profits derived from restricted lands of full-bloods are vested in the Secretary of the Interior as a trust fund, separate and distinct from the trust estate in the land itself under the act and regulations which had the force of law. It would follow, logically, that the Secretary may impress such funds with proper restrictions imposed simultaneously with the quasi release thereof.

[1] The Interior Department holds the moneys derived from leases upon restricted lands for the benefit of these wards of the government; they can be paid out only with the consent and approval of the department or some governmental agency, upon which like authority has been conferred. It would present a remarkable inconsistency in governmental policy, if such funds were not subject to the same beneficent control as the lands from which they are derived, and if a change by way of reinvestment in the interest and to the advantage of the ward

might not be made without loss of supervision and control. The Supreme Court in McCurdy v. United States, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706, and in Brader v. James, 246 U. S. 88, 38 S. Ct. 285, 62 L. Ed. 591, has held that, while an Indian is still a ward of the nation, there is power in Congress even to reimpose restrictions on property already free. The Supreme Court in Parker v. Richard et al., 250 U. S. 235, 39 S. Ct. 442, 63 L. Ed. 954, and Harris v. Bell, 254 U. S. 103, 41 S. Ct. 49, 65 L. Ed. 461, has recognized the county court as substantially a federal agency for the supervision of the estates of minor heirs. Its approval to conveyances is made necessary. Obviously the right to approve includes the right to impose conditions. The condition imposed in this case was in harmony with the policy of the government to retain control and supervision of moneys derived from leases upon restricted lands. The county court, in yielding its approval, did so upon the express understanding that the deed should be made in accordance with the rules, regulations, and forms prescribed by the Department of the Interior. It expressly required that the deed should contain the restricted clause which has been quoted.

[2] But appellees urge the controlling effect of McCurdy v. United States, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706, and United States v. Gray et al., 284 F. 103, and United States v. Ransom, 284 F. 108, decided by this court upon the authority of McCurdy v. United States. In these cases it was held that provisions in a deed conveying property of an Indian, reciting that it was purchased with profits of restricted land, and was not alienable by grantee during the restricted period, could not exempt the property from local taxation. This is undoubtedly true, but that circumstance cannot affect the supervision of the government in other respects. Congress has no power to withdraw from taxation in this way lands that have once been subject to taxation. United States v. Law, 250 F. 218, 162 C. C. A. 354; Sunderland v. United States (C. C. A.) 287 F. 468. The McCurdy Case presents three important considerations: First, it applies specifically to a special law governing the Osages. Second, the money which went to the purchase of new land had been released for a period of about six months before the repurchase, during which time it had not been subject to governmental control. Under the circumstances the repurchase was an independent transaction. Third, it announces that, while the Indian is still a ward, Congress has power to reimpose restrictions on property already freed, but not with the result of defeating local taxation, the right to which had attached.

The foregoing decisions and citations serve to show the policy of the government toward its Indian wards, and the length to which the courts have gone to protect them against rapacity and greed. We are not unmindful of the fact that the act of Congress in terms deals with the disposal of the proceeds of sale of allotted lands, and authorizes the Secretary of the Interior to prescribe such rules and regulations concerning such disposal as he may deem to be for the benefit of the Indian ward. It is the contention of the appellees that Congress has imposed no such restrictions and limitations upon the release of funds derived from oil leases, and has authorized the Secretary of the Interior to prescribe no rules and regulations concerning the disposal or release of such funds. They insist, therefore, that regulation 20 must be restricted to the subject-matter dealt with in the act and to the authority conferred upon the Secretary thereby.

[3] The act does in terms, however, authorize the making of these leases subject to the approval of the Secretary of Interior. It must be conceded that the royalties accruing therefrom are lodged with the officers of that department impressed with the same trust as are the lands themselves. United States v. Gray, 201 F. 291, 119 C. C. A. 529; United States v. Hinkle (C. C. A.) 261 F. 518; United States v. Moore (C. C. A.) 284 F. 86. Concerning the disbursement of such funds, the Secretary of the Interior, in the exercise of the discretion, and discharge of the duty, lodged in and imposed upon him, as such trustee, may prescribe appropriate rules and regulations. By amended regulation of November 29, 1912, he has directed his superintendent to "withhold the disbursement of such royalties, wholly or in part, from any such adult or guardian or curator of any such minor or incompetent, or his or her heirs, until such time or times, as the payment thereof is considered best for the benefit of said lessor, or his or her heirs." By regulation 20, the Secretary has covered, not only lands purchased with the proceeds arising from the sale of restricted allotted land, but also those purchased with "other moneys held under the control of the Department of the Interior." We think these regulations were authorized, and controlled the transaction under consideration. But, independently of the application of

regulation 20, we think the superintendent of the Five Civilized Tribes and the county court of Okmulgee county, Okl., did not in fact release the funds arising from royalties. They were not paid out to the Indian or to his guardians in the accepted sense, but were transformed by way of investment into the land purchased, and, by express terms, restricted as to alienation. As has been said, the right to withhold consent includes the right to impose conditions. Those conditions were imposed in the order of the county court and in the conveyance made, and are controlling independently of formal regulation. We think this conclusion is legitimately to be deduced from the language of Mr. Justice Sutherland in Sunderland v. United States, 266 U. S. 226, loc. cit. 235, 45 S. Ct. 64, 65 (69 L. Ed. 259). He says:

"Since the allotted lands could not be sold or incumbered without his consent, and since the proceeds of any sale thereof were subject to his control and could only be disposed of with his approval and under such rules as he might prescribe for the benefit of the respective Indians, the extension of such control to the property in which the proceeds were directly invested would seem to be within the statute fairly construed. *Indeed, we think the authority of the Secretary to withhold his consent to the proposed investment of the proceeds subject· to his control, includes the lesser authority to allow the investment upon condition that the property into which the proceeds are converted shall be impressed with a like control.* See United States v. Law, 250 F. 218, [162 C. C. A. 354]; United States v. Thurston County, 143 F. 287, 290, 291, [74 C. C. A. 425]; National Bank of Commerce v. Anderson, 147 F. 87, 90, [77 C. C. A. 259]."

While this language was used in connection with the investment of the proceeds of sale of restricted allotted lands, that portion in italics, which are ours, obviously would apply with equal force to the general acts of the Secretary in cases where his consent is necessary to the allowance of investment of moneys subject to his control.

[4] It seems clear, therefore, that none of the cases cited in opposition in any wise militate against the right of the government to retain supervision of the land thus alienated without the consent and approval of the Secretary of the Interior, or of the county court acting as a quasi federal agency. The funds with which it was purchased were paid out expressly upon the condition that the restriction against alienation should be preserved. The necessary consent to the subsequent conveyances was neither sought nor obtained. It follows, therefore, that the decree below must be reversed, with directions that the relief prayed by the United States should be granted, and that the several conveyances from Miller Tiger to Rosannah Brown, from Rosannah Brown to appellee Brotton, and from Brotton to appellees King and Whitenton, should be set aside and canceled, and the title quieted in Miller Tiger. The bona fides of these conveyances is unimportant. Whether the disposition of this land was made in good faith or upon commendable considerations cannot be made to affect this decision, which involves a public policy of far-reaching consequences.